## Lessee of EVANS *against* NARGONG.

THIS was an appeal from the decision of BRACKEN-RIDGE J. at a Circuit Court for *Northumberland*, in *May* 1807.

.It was an ejectment for a tract of land in *Northumberland* county, which the plaintiff claimed under the following title:

On the 5th *April* 1774, a warrant issued in the name of " *Ernest Burk*, for 300 acres " joining *Dietrick Reese*, " *Jacob Reese*, *Jonathan Pingley* and *William Armstrong*, " in *Buffaloe* township *Northumberland* county," which was a very accurate description of the premises in the ejectment; and on the 20th *April* 1774 the purchase money was paid to the proprietaries.

On the 11th and 13th *March* 1776, *Hawkins Boon* procured a survey to be made under this warrant, upon the land described, by *Henderson* the deputy surveyor, who upon a draught of the survey wrote the following memorandum, " draught of a tract as situate in *Whitedeer* town- " ship, formerly *Buffaloe*, *Northumberland* county, surveyed, " in dispute between *William Armstrong* and *Hawkins* " *Boon*."

*Hawkins Boon* was killed by the *Indians*, and his house and papers burned, at the taking of *Freeling's* fort on the *Warrior's* run in the year 1778.

In *November* 1785, an action was instituted against the administrators of *Boon*, in which judgment was obtained for 178*l*. 4*s*. 10*d*.; a *fi. fa.* upon this judgment was levied upon the land in question, and under a *venditioni exponas* it was sold and conveyed by the sheriff on the 27th *June* 1797, to *Evans* the lessor of the plaintiff.

The defendant's title commenced with an application of the 3d *April* 1769, No. 711, in the name of *William Armstrong*, for 300 acres on the south side of the west branch of the *Susquehannah*, above and adjoining land applied for by

A warrant issued from the land office on the 5th April 1774, for 300 acres in the name of *A.*, upon which the purchase money was paid. It was surveyed in 1776 under the direction of *B.*, and the deputy surveyor marked upon the survey, that it was in dispute between *B.* and *C.* In 1778 *B.* was killed by the Indians, and his house and papers burned. The land was afterwards sold under execution as the property of *B.*, and up to the trial of the ejectment by the purchaser in 1807, no person had ever claimed *A.*'s warrant in opposition to *B.* Held that these circumstances are sufficient evidence, that *B.* was the owner of *A.*'s warrant. Where a survey made and returned into office for *D.*, is claimed by *C.* under his own application, *C.* has no right to make any addition to the survey returned, without an order from the land office; and no private intention or action of his, can hinder the proprietaries from selling the adjoining land to any person who may apply for it.

1809.

Lessee
of
EVANS
*v.*
NARGONG.

*William Gill*, including the mouth of a small run about six miles above the mouth of *Buffaloe* creek.

In the year 1769, both before and after his application, *Armstrong* was making an improvement on the land, when a certain *James Parr* commenced an improvement upon the same tract, under an application of the 3d *April* 1769 in the name of *Jonathan Pingley* for 300 acres, which were surveyed in *October* 1769. A dispute took place beteen *Parr* and *Armstrong*, and on the 4th *April* 1770, the latter entered a caveat in the land office against the acceptance of a survey for, or the grant of a patent to, *Parr* or any other person in right of *Pingley*, alleging *that Pingley's application was executed elsewhere, and that the land last surveyed upon that application belonged to him by virtue of his application No. 711.* On the 29th *October* 1770 the hearing on the caveat was postponed, and in 1771 *Parr* and *Armstrong* agreed to divide the land in front on the river, so that the former should include his improvement, and *Armstrong* was *to fill up his application by taking in land in the rear.* This back land included the premises in controversy. Accordingly, when in the year 1773, one *Henry* settled down upon the land in question, *Armstrong* drove him off, and in *March* 1776, he caused a survey to be made upon his application by the deputy surveyor, and took in part of the land in dispute.

On the 25th *April* 1794, *Armstrong* conveyed to *Dale*, under whom the defendant held, his application No. 711, and on the 4th *May* 1794, a survey was made for *Dale*, which extended the lines so as to include 320 acres, comprehending more of *Boon's* survey. *Dale* also became the proprietor of *Pingley's* application.

The questions were two. 1. Whether *Boon* was the owner of *Burk's* warrant. 2. Whether the title to the land in dispute had not vested in *Armstrong*, and by him been transmitted to the defendant.

For the plaintiff it was said on the *first* point, that *Boon's* ownership of the warrant to *Burk* was a matter of necessary inference. *Boon* directed and probably paid for the survey. It was *Boon* who disputed with *Armstrong*, and from that time to the trial no one had ever claimed the war-

rant in opposition to *Boon*. His death in 1778, and the destruction of his papers by fire, sufficiently accounted for the want of a written document; but his acts, and the silence of others, shewed that he either was the owner of the warrant when it issued, having used *Burk's* name, or he became the owner by purchase immediately after.

On the *second* point, it was remarked that in the year 1770 *Armstrong* claimed the survey made under *Pingley's* application, and nothing more or less. According to his assertion, it was the land covered by his own application, and he therefore caveated the acceptance of the survey for *Pingley*. This was conclusive evidence to shew what was *Armstrong's* claim, and what his improvement in 1769 extended to. His agreement with *Parr* was a private matter between the two, and could affect no one else. Before *Armstrong* extended his lines so as to take in the back land, *Burk's* warrant of 5th *April* 1774 called expressly for it, and therefore bound it from its date; and the proprietaries, knowing officially that *Armstrong* claimed other land, had a perfect right to grant the warrant. *Boon* having followed up the warrant by a survey in 1776, did not lose his priority, and therefore the plaintiff was entitled to recover.

On behalf of the defendant it was contended, that no right to *Burk's* warrant being established in *Boon*, was of itself fatal to the plaintiff's claim. This being a warrant upon which the purchase money was paid, stronger proof should be required of a conveyance, than in the case of a location; and there was no proof of any kind. The fire might afford presumption of the loss of a deed, if its former existence had been shewn; but to take it as evidence of loss in this case, was to argue both the destruction and existence of the deed from the same accident. *Boon's* superintendence of the survey was as much the act of an agent, as of a principal.

The answer to the plaintiff's *second* ground, was that *Armstrong* had an improvement on the land in 1769, that in 1770 he claimed the premises under his improvement, and that in 1773 he turned·off a man who had settled upon the land in dispute, because it was within his claim of 300 acres. *Burk's* warrant adjoined lands of *Pingley* and *Armstrong*; therefore the only question was, what did *Pingley* and *Arm-*

*strong* claim on the 5th *April* 1774, the date of that warrant?
Now, it was most evident, that one of them claimed the land
in dispute, and had exercised an act of ownership, by turning
off a settler. If the plaintiff succeeded, neither *Armstrong's*
nor *Pingley's* survey would include the 300 acres, to which
they were respectively entitled.

His Honour charged the jury, that in his opinion, there
was sufficient in the fact of *Boon's* directing the, survey, in
his disputing the right with *Armstrong*, in the destruction of
his house and papers, and in the non-claim of any person
under *Burk* except *Boon*, to justify a presumption that *Burk*
had conveyed to *Boon*, or that the warrant was taken out by
*Boon* in the name of *Burk*. He therefore thought the plaintiff
ought to recover; for if *Armstrong* by his earlier application
and residence had a priority, still if by determining his claim
on any side, he led another to take an office right for, or even
to settle on that side, that other ought not to be disturbed.

The jury found for the defendant. A motion was made for
a new trial, which was overruled with a view to take the
opinion of this court; and accordingly the case was now argued
upon appeal, by *Huston* and *Watts* for the plaintiff, and by
*Hall* and *Duncan* for the defendant, upon the points made
below.

TILGHMAN C. J. after stating the facts, delivered the
opinion of the Court. Upon the trial of this cause, two ques-
tions arose. 1. Whether *Boon* was the owner of *Burk's* war-
rant. 2. Supposing he was, whether he was entitled to the
land in dispute. As to the *first*, without discussing the testi-
mony, we think it sufficient to express our opinion that under
all the circumstances of this case, there was satisfactory
evidence of *Boon's* being the owner of *Burk's* warrant. On
the *second* point, it appears to us that the plaintiff made a
very strong case. It was to be seen on the records of the
land office that *Armstrong* claimed a survey made and re-
turned for *Pingley*, and that he claimed nothing else. In this
situation, *Armstrong* had no right to make any addition to
the survey returned into the land office, without an order
from the land office; and no private intention or action of his,
could hinder the proprietaries from selling the adjoining
land to any person who might apply for it. We consider the

law on this point to be settled; and if it were otherwise, it would be productive of great confusion, and great injustice. On what ground the jury formed their verdict, does not appear. But the judge before whom the cause was tried was not satisfied with the verdict, although in order to take the opinion of this court on a point of law which he thought of importance, he overruled the motion for a new trial. Our opinion is, that a new trial should be granted.

New trial granted.