# Bellas *versus* Cleaver.

*Official Return of Survey binding after twenty-one Years, in the Absence of rebutting Facts.—Evidence to rebut derived from Calls in adjoining Surveys, and Marks upon the Ground.*

1. After the lapse of twenty-one years from the return of a survey, the presumption of law is, that the warrant was located as returned by the surveyor to the land office, and in the absence of rebutting facts, the official courses and distances will govern, the lines of the survey being presumed to be run as returned.

2. This presumption may be rebutted by proof of the existence of marked lines, monuments, and other facts tending to show that the actual location on the ground was different from the official courses and distances; and where younger surveys with fixed lines, call for the older as an adjoiner, the fact is admissible, as some evidence for this purpose.

3. Where the line of the older survey, called for by the younger surveys, was not actually run on the ground and located upon the line marked for them, but, as the adjoining lands were unappropriated at the date of the older survey, was supposed to be chamber work; the call for it, as an adjoiner in the younger surveys, has no effect either to enlarge or contract the dimensions of the older survey. The question is one of fact for the jury, as to what

[Bellas v. Cleaver.]

was the actual location of the older survey on the ground at the time it was made.

4. Upon a warrant granted to one William Green in 1784, a survey was made in 1789, and a patent granted for the land taken up in the following year. Four years after, in 1793, the same deputy surveyor executed two other warrants to Adams and Gray, and in his return of the surveys, wrote the name of the Green survey as an adjoiner upon the drafts. Between the Green survey, if run according to its official courses and distances, and the Gray survey on one side, and the Adams on another, the lines of which were marked, there was a vacancy, which in 1858 was appropriated by C., and a patent obtained from the commonwealth, for which vacancy the owner of the Green survey brought ejectment, claiming that the calls in the Gray and Adams surveys for his lines upon the south and west, returned for sixty-five years before the date of the defendant's warrant, raised a presumption of fact that the lines of the Green survey were originally run up to the marked lines of the surveys calling for it as an adjoiner, thereby rebutting the presumption that his survey was run as returned, and entitling him to recover: Held,

That, in the absence of proof to the contrary, by marked lines, monuments, or other competent evidence, the lines of the Green survey would be presumed to have been run as returned:

That, after the return, nothing but an order of resurvey could enlarge or diminish it, and that no act of the deputy surveyor, thereafter, in locating other warrants for other parties, could have this effect:

That the presumption contended for, that the lapse of time since the location of the junior warrants would give title up to their boundaries, had no foundation in reason nor authority in law:

That, as the acceptance of the Green patent was decisive as to its lines and quantity, its boundaries were now as then the official courses and distances of the survey as run and returned, its location remaining unaffected and uncontrolled by the junior surveys: and,

That the vacancy between the Green, and the Adams and Gray surveys, did exist up to the year 1858, when it was properly appropriated by the defendant, in whom, and in his heirs after his death, the title vested.

ERROR to the Common Pleas of *Northumberland county.*

This was an action of ejectment, brought July 16th 1858, by Hugh Bellas against Kimber Cleaver, to try the title to fifty-five acres and one hundred and twenty-three perches of land in Coal township, Northumberland county. Pending the action the defendant died, whereupon, Reynell, Coates Cleaver and Catharine M. Cleaver, his children, were substituted.

The plaintiff gave in evidence a warrant dated December 6th 1784, to William Green, for three hundred acres of land on the south side of a tract surveyed to Samuel Clark, on the Shamokin creek, in Northumberland, with a survey dated September 22d 1789, for three hundred and six and a half acres and allowance on Shamokin creek, adjoining lands surveyed for Samuel Clark and Samuel Wetherell, Jr., and the patent to William Green, dated 23d February 1790. The title thus acquired by Green was transmitted by a regular chain of conveyances to the plaintiff, who acquired it September 29th 1829, by deed from the administrator of Charles Witman, deceased, and claimed that the land in controversy was within the lines of the survey to Green.

[Bellas *v.* Cleaver.]

The defendants claimed to hold it under a warrant to Kimber Cleaver, dated January 7th 1858, and a survey thereon, and as not being within the Green survey, so that the main question in the case was, whether the land was or was not within the first survey.

The survey made under the warrant to Green, showed that it adjoined the lands surveyed in 1773 for Samuel Clark and Samuel Wetherell, on the south side, and that a corner represented as being a stone heap, common to the surveys of Green and of Clark, was the north-west corner of the former and the southwest corner of the latter.

The surveys of 1773 were distinctly located, but no marks were found on the ground corresponding in date with the Green survey, except two or three trees west of the line, running south from the stone heap. There were, however, marks of recent date, on what the defendant alleged was the southern and eastern line of the Green survey. In 1793 the surveyor who had made the survey for Green made three other surveys on warrants to William Adams, Dr. Young and Robert Gray, two of which call for Green as an adjoiner. The official distance of the northern line of the Adams tract as returned, is the same as that of Green, while the western line of Gray's survey is the same as the eastern line of Green. Marks of the date of the Adams and Gray survey were found on their lines where Green is called for as an adjoiner, and the theory of the plaintiff upon which he based his right to recover, was, that the survey of Green being called for by the surveys of Adams and Gray, the Green tract extends to the surveys which call for it as an adjoiner, unless there are marks found on the ground corresponding with the Green survey to restrain it, and that after the lapse of so many years as intervened between the return of this survey in 1793 and the application of Cleaver, without any interfering claim, the law will presume that the surveys adjoin each other, and that there is no vacancy. The defendants on the other hand contended that the legal presumption after twenty-one years have expired since the date of a survey, is, that the survey is made on the ground as it is returned into the land office, which presumption limited the holder of the Green tract to his official distance, in the absence of marks on the ground corresponding with the date of the survey extending the lines beyond the official returns ; that the call in the junior surveys of Adams and Gray cannot enlarge or abridge the boundaries of the Green tract, and that locating it according to its official courses and distances, the vacancy claimed for the Cleaver warrant and survey remains.

The court below (LINN, P. J.) instructed the jury as follows :

" After twenty-one years, a presumption of law arises that a survey was made upon the ground as returned into the land office,

[Bellas *v.* Cleaver.]

but such presumption is not conclusive against the owner of the survey, and may be rebutted by showing evidence of a different location. [The strongest evidence would of course be marks upon the ground, showing the true and actual location as made by the surveyor, the monuments made by him when he laid the warrant. But this is not the only evidence which will serve to contradict and overthrow the presumption of location.] The policy of the law, established for the safety and permanency of titles, adopts the paper survey as the true location in the absence of better proof to the contrary.

"On the other hand we instruct you, [that the call in the junior surveys of Adams and Gray for Green, is not sufficient of itself to overthrow the presumption, and extend the lines of Green to the surveys of 1793,] but we *do* instruct you that these junior surveys having been made but a few years after the Green survey, by the same deputy surveyor who laid the Green warrant, having been returned into the land office as adjoining Green, and so remaining undisputed for some sixty-five years, taken in connection with the proof that the call of Green for Clark is faithfully answered; that the surveys of Adams and Gray, as returned correspond exactly in the length of the lines calling for Green, with the official distances of the lines so called for, and that if the same excess were given to Green that appears in Adams and Gray, according to their actual location as found on the ground, the tracts would adjoin, and there would be no vacancy, affords powerful evidence to rebut the presumption claimed by the defendant. These facts would seem to tend strongly to show that the southern line of Green is identical with the northern line of Adams, and that the eastern line of Green is identical with the western line of Gray. The plaintiff contends that the southern and eastern lines of Green were never actually run, but were left open until the surveys of 1793 were made, when they were designated and fixed by running and marking the boundaries of these adjoining surveys. If this be so, then there was no land applicable to the Cleaver warrant, and the land surveyed in it is properly embraced in the plaintiff's survey. The question then in the case is narrowed down to this: does the evidence in the case satisfy you that the southern and eastern lines of the Green survey are identical with the lines of the Gray and Adams survey? In other words, [are you satisfied from the proof that the Green survey, as located by the deputy surveyor, adjoins the surveys of 1793, according to the calls of those junior surveys? If you are so satisfied, then you will find for the plaintiff, otherwise your verdict must be for the defendant.]

"We are asked by the plaintiff's counsel to instruct you: 'That if the eastern and southern lines of William Green were left open in 1789, that it was the duty of the deputy-surveyor, when he attempted to locate the warrants of Robert Gray and William

[Bellas *v.* Cleaver.]

Adams to fix the eastern and southern lines of William Green, and the law presumes he did so ; and he having returned Robert Gray and William Adams as adjoining William Green, and fixed the division lines between the said surveys, the western line of Robert Gray must, after a lapse of more than sixty-five years, without any interfering claim, be taken to be the division line between that survey and William Green, and the northern line of William Adams must be taken as the division line between the last-mentioned survey and William Green, notwithstanding the lines of William Green should thereby be extended from ten to thirty or thirty-five perches beyond the official distance on the draft returned for William Green.'

" We cannot so instruct you, although the law will presume that the deputy surveyor performed his duty, and that the return made upon the warrant of 1793, is correct and true after the lapse of twenty-one years. Yet the presumption arising from the return of survey on this warrant to William Green is equally strong, and where the legal presumptions are thus balanced, it will require proof to rebut one or the other. For further answer to this proposition we refer you to our general charge.

" The defendant's counsel request us to instruct you as follows, viz. :—

" 1. That the lines of the William Green tract, owned by Mr. Bellas, the plaintiff, must be presumed to have been run on the ground as returned into the land office, over seventy years, and that this is a conclusive presumption of law in the absence of any marks on the ground, showing a different location.

" To this we answer :—After a survey has been returned over twenty-one years, the law presumes that it was laid upon the ground as returned, but we cannot instruct you that such presumption is conclusive in the absence of marks upon the ground showing a different location. As we have already instructed you, there may be proof even where no marks are found on the ground, which will serve to rebut the presumption that the survey was made as returned. On this subject we have already endeavoured to explain to you, in our general charge, what we consider to be the law applicable to the case.

" 2. ' That under the evidence of all the surveys on the lines of the William Green tract, if you run according to the official courses and distances, and do not include the land in dispute, the plaintiff is not entitled to recover.'

" We answer :—The plaintiff does not deny that if no more is allowed to the Green survey, than its official courses and distances, it will not at all interfere with the Cleaver warrant, but it does not follow from this that the plaintiff is not entitled to recover. This will depend upon questions of fact which have already been noticed and submitted to you.

" 3. ' That the fact that the Robert Gray, a junior survey, has the name of ' William Green' written on the western side, is no evidence that the William Green survey extended to its line, especially as the Gray survey does not call for or adopt the courses of the Green tract.'

" To this we answer :—The call for the Green survey is not *conclusive* evidence of its adjoining the surveys calling for it, but it is *some* evidence bearing upon the question of the location of the Green survey, and must be so considered by you in connection with other proof in the case.

" 4. ' That a senior survey cannot be changed, contracted or enlarged by the location of a junior survey.'

" This is true as a general principle, still we hold that in a case like the present, the return of the junior survey may be given in evidence to show the location of the senior warrant, where, as in this case, the same deputy-surveyor located both warrants, and the returns have remained in the land office unimpeached for more than sixty years.

" 5. ' In the absence of monuments on the ground, showing that the Green survey was actually run on the ground so as to include the land in dispute, the survey must be located according to its official courses and distances as returned into the land office, and the plaintiff cannot recover.'

" We decline instructing you as requested in this point.

" 6. ' Under the evidence in the cause the plaintiff is not entitled to recover.'

" We cannot so instruct you. Whether the plaintiff can recover or not, depends upon questions of fact for your determination, and which have been already submitted to you.

" 7. ' That it is incumbent on the plaintiff to show affirmatively that the lines of his survey embrace the disputed territory, and he having failed in this cannot recover.'

" We answer :—The plaintiff must satisfy you from the evidence that the land in dispute is embraced within his survey. Whether he has done so or not is for you to find from the proof in the case.

" 8. ' That the land on the eastern, southern and western sides of the William Green tract having been vacant at the time that tract was surveyed, it must be located on these sides according to the official courses and distances, in the absence of marks on the ground showing a different location. And the fact that the junior surveys of Robert Gray and William Adams have the name of ' William Green' written on the sides next to the William Green survey, will not authorize the extension of the William Green tract to their lines, and is no evidence that the William Green survey was run beyond its official courses and distances.'

" This point has been fully answered, by what we have said to you in our general charge, and in answer to the defendant's third point."

Under these instructions there was a verdict in favour of the defendant. This was followed by a motion for a new trial, which, on argument, was dismissed, and judgment entered on the verdict. The plaintiff thereupon sued out this writ, and assigned for error here so much of the foregoing charge of the court below as is enclosed in brackets, as also the refusal of the court to answer the point presented by him in the affirmative, and the answer given to that point and to the first point of the defendant.

The case was argued in this court by *Pleasants* and *Comly* for plaintiffs, and by *John B. Packer* and *William M. Rockafeller* for defendants in error.

The opinion of the court was delivered, October 31st 1861, by

THOMPSON, J.—The main question below was whether or not the land in controversy was covered by the warrant and patent of the Green tract, which was surveyed on the 22d September 1789, on a warrant to William Green dated the 6th of December 1784, and patented the 23d of February 1790. The plaintiff in error is the owner of the Green tract, and complains of the ruling of the learned judge of the Common Pleas, upon the effect of the return of survey on the Green warrant, and his charging that, in the absence of lines on the ground, or evidence showing them to have been actually run, the presumption after twenty-one years is that they were run as returned.

The plaintiff contended that his tract extended to and adjoined the William Adams survey on the south, and the Robert Gray on the east, and claimed to establish this by the return of those surveys, and that therefore the presumption alluded to did not apply to his case. The location of the Adams and Gray warrants was in 1793, four years after the Green, and three years after it had been patented. Between the lines as returned for the Green warrant and those run and marked as the northern line of the Adams and the west line of the Gray, is the land in controversy, and if it is covered by the Green warrant and patent, as the plaintiff claims, it will give to that tract 55 acres and 123 perches more land than is embraced within the lines of the official survey as returned into the land office. The plaintiff insists that those surveys calling for his lines on the south and east, after so great a lapse of time (sixty-five years) before the date of the defendant's warrant, raise a presumption of fact that there was where his lines were originally run, and that the presumption that the survey was run as returned was rebutted

[Bellas v. Cleaver.]

thereby, and that he is entitled to recover. The learned judge below charged against him on this view of the case, and the question now is, was he right?

It is an indisputable principle that a tract of land cannot be carried beyond its marked boundaries to reach its calls, and hence it is certain that the Gray nor Adams survey does not in any way interfere with the land in dispute.

It is also well settled, and should now be considered an elementary principle, that where there are no lines or monuments on the ground, or calls to indicate where the line or lines of a survey should be, there the courses and distances as returned must be resorted to in order to fix and define the boundaries. So is it as well settled in cases of an official survey where lines have not been run on the ground or cannot be shown to have been so run, that after twenty-one years from the date of the return, the lines will be presumed to have been run as returned. There being no marks of a survey on the ground, or designated monuments, or proof that they ever existed, is what gives rise to this presumption, and also brings into play the test of location by the courses and distances—the compass and chain. It is not possible to doubt that in appropriate cases, lines so ascertained are to be regarded as equally well settled with those fixed by the marks on the ground.

In the case in hand the defendant's theory was, and we think it was fully sustained by the evidence, that the south and east of the Green tract was not originally run, on the ground that these lines were chamber work. If this were so, the survey was clearly within the principle that after twenty-one years it was "presumptio juris et de jure," as we said in Ormsby v. Ihmsen, 10 Casey 462, that the survey was made as returned, and upon this rule the owner of this warrant and patent was bound by the courses and distances therein contained, and so the court in substance charged.

After the return of survey, nothing but an order of resurvey could authorize an enlargement or diminution of it. The authority of the deputy was exhausted by the return: 3 Yeates 399; 2 Binn. 55; 7 Barr 72. Thenceforth the boundaries would remain, unless changed by the authority of the land office. It follows, therefore, that the mere act of the deputy for other parties and at another time, could not produce the effect of enlarging the survey—that he could not effect a result indirectly, which it will not be pretended he could do directly.

The presumption contended for, that the lapse of time since the location of the junior warrants will give title to the senior up to their boundaries, seems to me to have no foundation to rest upon. It is certainly not a natural presumption, that an act not done in or about the latter, but exclusively for the former,

[Bellas *v.* Cleaver.]

shall be intended as done for the latter, and so materially to affect it. It would do violence to common sense to hold this to be so; nor can it be claimed to be a presumption of law, which is artificial, without showing authority for it. The presumption that the survey was made as returned, stands until it is overturned by facts; but the assurance presumptive of the plaintiff neither disproves it nor touches it. "*Stabit presumptio, donec probetur in contrarium.*"

On the authority of Sweigert *v.* Richards, 8 Barr 436, these junior surveys of the Adams and Gray warrants were received as the declarations of a deceased artist, who located the Green tract, and who it was claimed had afterwards located them. This was on the principle of hearsay evidence in regard to boundary. They were perhaps evidence in this aspect of the case, but it was going very far to say they were "powerful evidence," as the learned judge thought that the Green lines had been actually run just where they were found. It would be strange that the junior lines were to be found on timber still standing, on and near them, and not a single mark to be found of the survey made four years before. In the presence of such a fact as this, the declaration of the deputy in making these returns, that they were on the actual lines of the Green tract, is, to say the least of it, not powerful. This fact, and the incongruity between the courses, distances, and corners of the Green survey, as returned, and these junior surveys, induced the jury to disbelieve that the lines of the former and latter had been run on the same ground. About this part of the case, however, we have no point before us for review. The only use and effect to be given to these returns on the trial was given, in submitting them as hearsay evidence of boundary. As calls they have no effect to enlarge the boundaries of an older survey, and to this point is Carbon Iron Co. *v.* Rockafeller, 1 Casey 55. "The adjustment of the lines of a younger survey," said Woodward, J., "can never affect the location of an older; it lies where it was put by the surveyor, and whilst it may help to locate surrounding surveys that are younger, it (the older) is not to be changed, contracted, or enlarged by what may be *done in the location of them.*" This is the true doctrine of this case, and we might well leave the discussion here. But we may notice the practical workings of a different rule.

It would have the effect to change and enlarge surveys even after, as in this case, a patent had issued. It would introduce lines neither returned by the deputy surveyor, nor to be found in the patent. It would pass lands not sold by the commonwealth, and without her consent, and without paying to her the purchase-money. It would ignore the orderly mode of changing a boundary by an order of resurvey, a consequence of which is,

[Bellas *v.* Cleaver.]

payment for any increase of land, and an official return of the new survey. On the other hand, as the enlargement by this process is without the consent of the senior warrant-holder, it might give him quantities and qualities of land which he did not want, and worst of all, render uncertain the lines in his patent, and the description in deeds of conveyance that may have been made from it. Gores will exist wherever vacant land lies between the marked lines of approximating surveys; and we do not advance a step to prevent this by unhinging the settled law, which presumes the location to have been made as returned after twenty-one years, thus establishing boundaries. They will necessarily exist when lines on the ground exclude land between surveys. If evil arise from gores, it cannot be helped in such circumstances, and the commonwealth being the proprietor, has the sole right to appropriate them to parties willing to buy and pay for them. So the same rule should hold when, upon other principles, the location of land is equally well settled, or capable of being settled.

In the case in hand, the plaintiff's tract was patented, as already said, in 1790. This court has said that the acceptance of a patent ends all controversy about lines and quantities other than those described in it: Hagerty *v.* Mathers, 7 Casey 357; so it is here. True, a resurvey, ordered by the land office, might have enlarged the original survey, if obtained before intervening rights, and even after a patent, by surrendering it, but that was not done, and the junior calls did not and could not change the boundaries of a senior survey. The consequence is, that the plaintiff must submit to be bounded by the lines of his tract as made and returned into the land office seventy years ago. We see no error in the case, and the judgment is

Affirmed.

WOODWARD, J., dissented.