## J. S. CROSS v. TYRONE M. & M. CO.

**ERROR TO THE COURT OF COMMON PLEAS OF CENTRE COUNTY.**

Argued April 17, 1888—Decided October 1, 1888.

In an ejectment, the defendant located the tract in controversy, which was without marks on the ground, by original marks and monuments claimed by his surveyors to be the line of an adjoining survey called for, and asked for instructions that "if the jury believe that the marked trees testified to by defendant's surveyors, and the cranberry swamp, are original marks of the Bryan survey, then this fixes the location of the Bryan, and the verdict must be for the defendant."

The court answered: "That point is refused, because it is the duty of the jury, under all the evidence in the case, to find as a fact the true location of the land in dispute:" *Held,*

1. That, as the request was in substance that the court should instruct

Charge of Court below.

the jury as to the legal effect of their finding certain facts of which there was evidence, the instruction was erroneous.

2. That, as the defendant's case rested upon the testimony of surveyors that trees originally marked were actually on the ground, had been examined by them and bore the marks of the survey, it was also error for the judge to instruct, in speaking of the original surveys, that "it is not to be expected that the marks then made on the ground are now to be found."

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 60 July Term 1887, Sup. Ct.; court below, No. 28 April Term 1884, C. P.

On February 7, 1884, an action of ejectment was brought by J. R. Lowrie, trustee, by subsequent substitution, of the Tyrone Mining & Manufacturing Co., against James S. Cross, for a portion of a tract of land in Halfmoon township surveyed in the warrantee name of Richard Whitehead. The controversy is illustrated by the following sketch:

SAM. BRYAN.

War. March 9, 1785.
Sur. November 11, 1785.

R. WHITEHEAD.

War. March 9, 1785.
Sur. November 11, 1785.

Charge of Court below.

The facts as they appeared at the trial on February 1, 1887, before CUMMIN, P. J. 29th judicial district, holding special term, are shown in the charge of the court, parts of which follow:

The issue which you have been sworn to try, arises in an action of ejectment brought by the Tyrone Mining & Manufacturing Company against James S. Cross. The action was originally brought by J. R. Lowrie as trustee, but the title changed after the suit was brought, and the Tyrone Mining & Manufacturing Company having become the purchaser, it comes in as the plaintiff. The action is brought by this plaintiff to recover the possession of a certain tract of land in Halfmoon township, being that part of the tract surveyed in the warrantee name of Richard Whitehead which lies west of the part leased to The Juniata Mining Company, Limited, bounded on the south by land in the warrantee name of Jacob Way, on the west by land of George Gates, and on the north by other lands of the plaintiff, containing 100 acres more or less. . . . .

The plaintiff, as you remember, showed among the first things the writ of ejectment, and that it had been served on this defendant, and that shows the defendant to be in possession. Then the plaintiff proceeded to show its title to the land described in the writ; and this, you will remember, the plaintiff did by showing, first, the warrant and survey of this tract of land in the name of Richard Whitehead, and then by following that by sundry deeds, conveyances, and other evidences of transfer bringing the title of the tract in the name of Richard Whitehead down to the plaintiff. Then the plaintiff rested. That was all the plaintiff had to do; and if the case had stopped there, the plaintiff would have been entitled to the verdict. Then the defendant presents his side of the case. He does not claim that he owns any part of the Richard Whitehead tract, so there is no question as to the title of the Richard Whitehead; but the defence set up here is that the Richard Whitehead tract is located at an entirely different place, and that the land described in this writ is not included within the lines of the Richard Whitehead tract; and this, then, brings up the real question. The defendant then proceeds to show by his maps, surveys, and witnesses that the Richard Whitehead is located at an entirely different place.

Charge of Court below.

Then the plaintiff again replies, calls its witnesses, and shows its maps and surveys tending to show that the tract is located where it claims : and thus you discover that the real point in this case is to find the true location of the tract in the name of Richard Whitehead. If you find that, you will have but little trouble in deciding the case. This, then, is a question of location; that is, a question of fact which the jury must determine from all the evidence ; it is a question which the court has no power to determine. It must go to the jury ; they are to find the facts in all cases; and the fact to be found in this case is, where, on the ground, is the true location of the Richard Whitehead tract. . . . .

Here we have to repeat what counsel on both sides have said to you that the hightest and best evidence of the location of a tract of land is the monuments found on the ground and which have been made for that particular tract. If you find them on the ground, that is the best evidence of the true location of the tract; and then it matters not what the calls are, what the lengths of the lines are, nor what their courses are ; you go from one monument to another, if you can find them ; and that fixes the true location.

[Of course many years have elapsed since these surveys were made, and it is not expected that the monuments then made on the ground are now to be found. This has occurred in many cases before, and hence a rule had to be established ; and the Supreme Court has laid down the rule that when you cannot find these monuments on the ground, which were made for the tract by the surveyor, you must go to the calls ; because, as has been already stated to you by counsel, it was the duty of the surveyor, when he was directed to survey a tract, to go upon the ground and run and mark the lines. That was his plain duty ; he did not always do it ; and from that fact many troubles arose. No doubt much of this case arises out of the fact that the surveyor did not go upon the ground.][4] As before stated, when you are unable to find the monuments on the ground, you next go to the calls. You find that the survey calls for a tract of land on the north, another on the south, another on the east and another on the west. If you cannot find the monuments on the ground, you take these calls, and between these calls you find the tract you are looking for ; and

you fix it by the tracts that are around it just as you often see in the sale of land by a sheriff. He will sell the farm bounded north by the land of A, east by the land of B, south by the land of C, and west by the land of D; and though there is no monument given, and no courses and distances, yet you can find the land. You do this by finding where these lands of A B C and D are; and the land that is between them is the land that is sold. The same rule applies in this case. You are not to look at or be governed by these calls, if you can find the monuments on the ground that belong to the tract; it is only when you cannot find them that you go to the calls. Then if you cannot find the monuments on the ground, and there are no calls to govern the location of the tract, the next thing you can go to is the courses and distances. They are the lowest and weakest evidence, and you can only resort to the courses and distances when you cannot locate first, by the monuments, or second, by the calls. Then, of course, when you come to the courses and distances, there must be some way for the surveyor to get on the true line, because he must have a starting point before he can begin to ascertain the true courses and distances.

If you do not find monuments on the ground which enable you to locate the Richard Whitehead tract, then you go to the calls, as we have said. And here you will discover that there is an important matter to be considered; and that is the date when the survey was made, because, of course, a survey made in 1785 cannot call for one made in 1786; for the one made in 1786 had no existence at the time the other was made; so you find these calls to be related to something that was done before. This may be useful to you in endeavoring to get at the location of this tract. When you do not find monuments on the ground, take the entire map and look first at the oldest tracts that are there; they are fixed on the ground; then put on what was done there next, and then what was put on after that, and so on till you find everything that was done before the tract in question was located. Then, if it calls for any of these older tracts, you will have something to go by.

Some points have been submitted by counsel which may, perhaps, as well be answered at this place, after which we will call your attention to some other matters.

Charge of Court below.

The counsel for the defendant requests the court to charge the jury as follows :

1  That the burden of proof is upon the plaintiff to satisfy the jury, by the weight of the evidence, that the land in dispute is embraced within the lines of the Richard Whitehead ; and, unless the jury are so satisfied, the verdict must be for the defendant.

Answer: That point is affirmed, so far as it relates to the title to the land, for it has long been established that the plaintiff must recover on the strength of his own title, and not on the weakness of his adversary's.   The defendant is in possession of the land in dispute, and the law permits him to remain there until some plaintiff comes into court and shows a better title.[1]

2. As the Richard Whitehead is a chamber survey calling for the Samuel Bryan and located to it, its location is to be determined by the location of the Samuel Bryan.

Answer : That point was conceded by the counsel on the other side, and is, of course, affirmed by the court.

3. As the Samuel Bryan is returned as including a cranberry swamp, it is important for the jury to ascertain from the evidence whether this part of the return is reasonably answered by the location contended for by the defendant ; and if it is, and is not answered by the plaintiff's location, then this is a circumstance of considerable weight to be regarded by the jury in determining its true location.

Answer : This point is refused, because it is for you to determine what importance or weight you will attach to the evidence relating to the cranberry swamp ; and you will also determine whether the survey returned does include the cranberry swamp, under all the evidence, for, in looking at this survey, the calls on the draft are not the same as those on the written part of it.   The official survey of Samuel Bryan, in the written part, sets forth that this is a tract of land situated in or near the Halfmoon creek, adjoining lands of William Burgess, William Weiser, and others, including a cranberry swamp.   The draft, which appears above this writing, contains no call for any land in the name of any of these parties, nor is there any mark upon the draft as to where the cranberry swamp is, so that the matter must go to you to be determined.   It is not one which the court can determine.[2]

Charge of Court below.

4. The location of an older survey is not in any way to be controlled or affected by the call of a younger survey made many years after by a different surveyor, and therefore the call of the Elliot for the Bryan cannot in any way affect its location.

Answer: That point is affirmed as a general principle. A junior survey cannot affect or disturb the location of a senior; but it does not follow from that, that in proper cases junior surveys may not be evidence to assist the jury in their endeavor to find the location of a senior survey which cannot be fixed by its own corners, calls or lines. One theory of the plaintiff in this case is that there is nothing found on the ground which enables the jury to fix the location of the Samuel Bryan by its own corners, calls or lines, and if you find that to be the situation in this case, then we say to you that the location of junior surveys is evidence for your consideration in endeavoring to find the true location of the Samuel Bryan tract.[5]

5. The highest evidence of location is the original marks found on the ground, called for in the return of the deputy surveyor; and if the jury believe that the marked trees testified to by the different surveyors and the cranberry swamp are original monuments, or marks, of the Samuel Bryan survey, then this fixes the location of the Bryan; and the verdict must be for the defendant.

Answer: That point is refused because it is the duty of the jury, under all the evidence in the case, to find as a fact the true location of the land in dispute.[3]

Now there are different kinds of evidence before you in this case. You have the testimony of witnesses, the testimony of surveyors who have been upon the ground and surveyed, not only the tract of land in dispute, but many other tracts of land adjoining, all with a view of tending to sustain their particular theory of the case; and, when surveyors who have been upon the ground and made these surveys come into court, they are permitted to give an opinion, the result of their judgment, about the true location. So you find that the defendant's surveyors express the opinion that they located this Whitehead tract on the defendant's map correctly; and, of course, that excludes the land of the plaintiff. On the

other hand, you have the testimony of the plaintiff's surveyors who have gone over this ground; and they give it as their opinion that their location is correct, and that this land is in the Richard Whitehead.

In addition to this you have the blocks of wood taken from the trees that have been found. As it happens in this case, all the blocks in court relate to but one tree. Although the witnesses testified yesterday that they had taken a block out of the oak and counted it, yet the block is not produced in court for your examination. The blocks we have here are taken from the pine tree; and there is a dispute about the count, the different surveyors finding different numbers of growths in the blocks. The surveyors for the defendant maintain, on their side of the case, that their block shows that the tree from which it was taken was a tree of the original survey of this tract, for, they say, it counts to the proper time. On the other hand, the witnesses on the other side produce another block, which they testify was taken from the same tree and which they declare counts three or four years more. They also count the block which the defendant produces in court and declare that their count of it shows that it was marked three or four years before the time of this survey. Other witnesses are called who were not on the ground and know nothing about the property in dispute here, but whose attention was only called to the blocks for the purpose of counting them, and they testified that these blocks show the marks to have been made three or four years before this tract was surveyed. All this is matter for you to consider and weigh in your endeavor to find out whether the tree from which these blocks were taken was one of the original trees of this line.

[Then you have the original surveys. When the surveyor-general or his deputy, or at a later period the county surveyor made a survey in pursuance of a warrant duly issued, it was his duty to go upon the ground, run out the tract, mark its lines and corners and make a return of it in which he gave a plot of the tract as he ran it with such description as might be necessary to identify it; and this was then returned to the land office. Here you have that return, along with a bundle of these warrants that were returned from year to year. These are important papers and they are of great value to the jury

Arguments.

in getting at the true location of a tract of land, because you have here the work that was done many years ago, before any party present in court possibly was interested. Upon these official surveys, you find the marks on the ground, the corners that are called for.] [6]

[Usually the calls refer to the warrantee name of some adjoining tract, but this is not always so. Often the surveyor gives the name of the person who happens to own the land adjoining, while the warrantee name may be an entirely different one.] [7] Then, in addition to that, you have official certified copies of connected tracts of land. There is one put in here showing the London tracts of land and other lands, showing how they stand with relation to each other. . . . . .

You have heard the testimony of the witnesses and you will have all these drafts and maps with you, and being governed by the law as we have stated it, you will from all the evidence endeavor to find the true location of the Richard Whitehead tract. If you find the land in dispute to be within the lines of the land of the plaintiff, then let your verdict be for the plaintiff, for the land described in the writ; but if the land in dispute is not within the lines of the plaintiff's land, then let your verdict be for the defendant. These are all the instructions we have to give. You will have to settle the facts.

The jury found for the plaintiff for the land described in the writ. A motion for a new trial was entertained, rule granted and discharged, when, judgment having been entered on the verdict, the defendant took this writ, assigning as errors:

1, 2. The answers to defendant's 1st and 3d points.[1] [2]

3. The answer to defendant's 5th point.[3]

4. The part of the charge embraced in [ ] [4]

5. The answer to defendant's 4th point.[5]

6, 7. The parts of the charge embraced in [ ] [6] [7]

*Mr. Thos. H. Murray* and *S. R. Peale* (with them *Mr. John G. Love*), for the plaintiff in error:

1. The answer to the first point is misleading in that it limits the burden of proof as applied to plaintiff, to proof of title alone, and taken in connection with what is stated in the

general charge, it amounts to an instruction that as to all that was in dispute in the case, the burden of proof was on defendant. Upon request made to the court, a party is entitled to a clear and distinct instruction on the rule of law applicable to his case: Slaymaker v. St. John, 5 W. 27. The second assignment is to the answer made to defendant's third point, in which the defendant sought to obtain an instruction as to the effect of a fact proven. That fact was that the survey of the Samuel Bryan returned as including the cranberry swamp was reasonably answered by the location of said survey contended for by the defendant and not answered by the plaintiff's location. This instruction was refused, and nowhere is this refusal supplied in the general charge. That this was error is plain: Pruner v. Brisbin, 98 Pa. 204; McDowell v. Young, 12 S. & R. 129.

2. The proposition contained in the fifth point was obviously a question of law. As the marked trees and this swamp were the only original monuments or marks which either party pretended to identify by witnesses, as still existing and corresponding to the return, the point was vital to the defendant. The only evidence of this kind from the plaintiff was traditional, as to marked trees which could no longer be identified, and was not even competent, because it was the declaration of a party unconnected in title, or by work done in surveying and relating to a private line: Bender v. Pitzer, 27 Pa. 333; Long v. Colton, 116 Mass. 414; Curtis v. Aaronson, (N. J.) 6 Cent. R. 87. And that neither quality nor character is essential to a monument of location is evident from the authorities: Newson v. Pryor, 2 Wheat. 7; McDowell v. Young, 12 S. &. R. 129; Patterson v. Ross, 22 Pa. 340; Jackson v. Widger, 7 Cow. 723; Findlay v. Williams, 9 Cranch. 164.

3. The court charged that it was "not to be expected that the monuments then made on the ground are now to be found," and that "much of this case arises out of the fact that the surveyor did not go upon the ground." The surveys to which this language relates are the Bryan and the Whitehead. That they are to be located together as a block is undisputed. This is assumed by the court in answer to the second point; and, being so, every mark or monument of the Bryan is a mark of the Whitehead as well, as much so as if the whole area em-

braced in the two surveys constituted but a single tract, with the Bryan portion for its north end, and the Whitehead portion for its south end: Malone v. Sallada, 48 Pa. 419; Eister v. Paul, 54 Pa. 198; Pruner v. Brisbin, 98 Pa. 210.

*Mr. John H. Orvis* (with him *Mr. C. M. Bower* and *Mr. E. L. Orvis*), for the defendant in error:

1. The answer to the defendant's first point was more favorable than he had a right to ask. The court should have charged the jury as did the court below, affirmed in this court, in McDermott v. Hoffman, 70 Pa. 48: "We instruct you that the plaintiff, having a prima facie case, is entitled to recover unless the evidence, all considered, so preponderates as to show a location of the Barton surveys, which would remove the Baker and Wager tracts away from the land in controversy, as claimed by the defendants, in which case your verdict should be in their favor." And the court was right in refusing the second point. What the defendant calls the cranberry swamp was a succession of ponds along the southern line of the tract as he located it, and he had to extend the tract fourteen rods beyond its official distance in order to take these ponds into it.

2. The vice of the fifth point, and the reason it was rightly refused was, that it asked the court to say to the jury that they must find for the defendant, if they found that the two marked trees were made for the Bryan survey and the cranberry swamp was a monument of it, without regard to the other evidences of location. The general proposition in the first part of the point is undoubtedly true, but the latter part is not a necessary sequence from it. "Nor do we think it was error to decline charging that the facts assumed in the several points of the plaintiff, proved the positions contended for. The reason for refusing was ample, if, indeed, a judge can be compelled to give his opinion on facts, excepting in case of a demurrer; it was, that there were other facts in evidence, not noticed in the points, necessary to be considered:" Gratz v. Beates, 45 Pa. 505.

Opinion, Mr. Justice Williams:

This action was brought to recover that part of the land surveyed in the name of Richard Whitehead, which lies "west of

Opinion of the Court.

the part. leased to the Juniata Mining Co., bounded," etc.
The defence was that the Richard Whitehead survey did not
cover the land in controversy. The true location of the White-
head was therefore the real point in dispute. There seems to
be no difference of opinion about the fact that the survey of
the Whitehead was a chamber survey, no marked trees or
natural monuments being called for in the official return, or
found upon the ground. The calls for adjoiners as returned
to the land office are for vacant land on the east and south, for
William Burge on the west, and for Samuel Bryan on the
north. The call for Burge on the west was a mistake, as there
is no tract in the name of Burge warrantee adjoining the White-
head as located by either of the parties. The Samuel Bryan,
however, is located on the north, and was surveyed on Novem-
ber 11, 1785, the same day on which the survey of the White-
head purports to have been made, and calls for the Whitehead
on the south.

In order, therefore, to locate the warrant in controversy it is
necessary first to locate the Bryan survey. The official return
describes the Bryan thus: "Situate in or near the Half Moon
Run, adjoining land of William Burgess, Mr. Weston, and
others, including the cranberry swamp, containing two hundred
and ninety acres and sixty-four perches and allowance;" and
the adjoiners shown by the draught of the survey, are vacant
land on the east, the Richard Whitehead on the south, Mr.
Dougherty in the angle of the west line, and from the post at
the northwest corner to the pine at the extreme northern end
of the tract, vacant land.

The Bryan must be located, therefore, by reference to its
call for Dougherty, by the pine corner at its northern extrem-
ity, and such marks of the original survey as may be found
upon its lines. In the angle of the west line where the Dough-
erty is called for, there is a warrant in the name of William
King. No tract in the name of Dougherty is found in the
neighborhood, but the plaintiff alleges and gave evidence to
show that one Bernard Dougherty was a part owner of the
warrant on which the King tract was located, when it was
placed in the hands of the deputy surveyor; and as the Bry-
an was located seven days earlier than the King, he argues
that the name of Dougherty, a part owner, was used at that

time instead of King, by inadvertence, and that the survey in the name of King is the one intended where the name of Dougherty appears on the return.

By the aid of the King survey, and the pine corner at the north end, which the plaintiff alleged to be a well-known original corner, the plaintiff located the Bryan, and adjoining it on the south the Whitehead, thus bringing the land in controversy within the lines of the Whitehead. The defendant undertook to locate the Bryan without regard to the King survey, or the alleged pine corner. His position was that the lines of the Bryan, or some of them, were actually run upon the ground, and that at least two of the trees originally marked upon the east lines were still standing, and must control the location. Starting from an alleged northern end of the east line, the defendant ran south along the line of the marked trees far enough to inclose the pools or marshes spoken of by witnesses as the "cranberry swamp," and then ran west the official distance; thus fixing the south line of the Bryan and the north line of the Whitehead. By this location the land in controversy would be excluded from the Whitehead and left wholly or mainly on the north side of it.

The plaintiff's location by the white-pine corner and the King survey carried the tract considerably further north and west. The question for the jury was, which of these locations is the true one. To guide the jury in this inquiry the defendant asked the court to instruct them that " the highest evidence of location is the original marks or monuments on the ground called for in the return of the deputy surveyor ; and if the jury believe that the marked trees testified to by defendant's surveyors, and the cranberry swamp, are original monuments or marks of the Samuel Bryan survey, then this fixes the location of the Bryan, and the verdict must be for the defendant." The learned judge made reply as follows : " That point is refused, because it is the duty of the jury, under all the evidence in the case, to find as a fact the true location of the land in dispute."

The unqualified refusal of the instruction asked for was clearly wrong, and the reason given for the refusal is not pertinent or responsive to the proposition embodied in the point. Here were two conflicting theories of location presented to the

jury. One of these rested on the white-pine corner and the call for the King survey. The other rested on the alleged original marked trees in the east line and the position of the cranberry swamp. Which should the jury adopt? That depended, as the learned judge said in his answer, on what they should conclude from "all the evidence in the case." But the hypothesis of the point was, that the jury had closed this inquiry and come to the conclusion that the marked trees and the cranberry swamp were "original monuments or marks of the Samuel Bryan survey;" and asked the court to say that if so they were "the highest evidence of location," and would fix the lines of the Bryan tract. This proposition should have been affirmed, with such explanations as the learned judge might have deemed necessary to make himself clearly understood by the jury.

If, "under all the evidence," as the point assumed, the jury had come to believe that the marked trees relied on by the defendant were made by the deputy surveyor to mark the east line, and that the pools which he alleged constituted the cranberry swamp were included in the survey and referred to in the return as a natural monument of the location, then they must reject the contrary proposition that the King survey was that referred to as the Dougherty, and the white-pine corner as fixed by the plaintiff was the true northern point of the survey. In that event what effect should be given to their finding upon this question of fact? The point asked the court to say that such a finding would, under the legal rules applicable to surveys, be conclusive on the question of location; but the learned judge refused so to say, and instead thereof told the jury that it was their duty to fix the true location from all the evidence in the case. This was not responsive to the point. What was asked was that the judge should tell the jury the legal effect of their finding certain facts. Instead of this, he told them that they must find the facts from all the evidence in the case. This as a general instruction was quite right, but as an answer to the point, it was in no sense responsive, and wholly missed the subject to which the attention of the court was drawn.

The fourth assignment of error is also sustained. The learned judge, in speaking of "these surveys" and the length

of time since they were made, said to the jury that " it is not to be expected that the monuments then made on the ground are now to be found," although the defendant's case rested on the testimony of surveyors, who asserted that the trees originally marked, or some of them, were actually on the ground, had been examined by them, and bore the marks of the survey. The jury might naturally understand from this remark that the learned judge discredited the testimony of the defendant's witnesses and regarded the alleged original marks as entitled to no consideration, and their judgment might have been controlled by what they understood to be the opinion of the judge. It may be that the defendant's theory was not so supported as to convince the judge or the jury that it was the true one, but he had a right to have it passed upon by the jury under proper instructions. We regret to send this case back for a new trial, as the general charge seems to us correct and entirely fair, but as the errors complained of in the third and fourth assignments of error may have influenced the verdict we have no alternative.

The judgment is therefore reversed, and a writ of venire facias de novo awarded.