## TYRONE M. & M. CO. v. JAMES CROSS.

### ERROR TO THE COURT OF COMMON PLEAS OF CENTRE COUNTY.

Argued April 25, 1889—Decided October 14, 1889.
[To be reported.]

1. The lines of an official junior survey which calls for a senior survey as an adjoiner, may be admitted in evidence, as showing the acts and declarations of the deceased deputy surveyor as to the location of the lines of the senior survey.
2. The purpose of the evidence is not to disturb, but to sustain the senior survey, by showing that the surveyor who located the lines of the junior tract, recognized the lines of the senior, and acted thereon in doing his work on the ground.
3. Where there is nothing on the ground to overcome it, the legal presumption that a tract was surveyed as returned must prevail, and the mere failure, in surveying the junior tract, to re-mark the lines of an older survey called for, will not weaken that presumption.
4. When it is sought to locate a survey by a junior survey calling for it, the general rule being that in the absence of marks restraining it a survey will go to its adjoiners, and be located by them, it is inadequate to instruct that the location of the junior would furnish " some evidence " of the location of the survey called for.
5. Where the answer to a point is neither an affirmance nor a denial of the proposition of the point, as it is applicable to the case trying, and leaves the jury without definite instruction upon the question raised thereby, such answer is error.

Before PAXSON, C. J., CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 398 January Term 1889, Sup. Ct.; court below, No. 28 April Term 1889, C. P.

On February 7, 1884, an action of ejectment was brought by J. R. Lowrie, trustee, and by subsequent substitution the Tyrone Mining & Manufacturing Co., against James S. Cross, for a parcel of land in Halfmoon township claimed by the plaintiff to be a portion of a tract surveyed in the name of Richard Whitehead, an outline of which appears in the report of a former trial: Cross v. Tyrone M. & M. Co., 121 Pa. 387.

At the second trial of the case, on December 5, 1888, it appeared that the Whitehead survey was made in 1785, but that it could not be located by marks on the ground. The Whitehead, however, called for the Bryan, a survey of the same date, on the north.

In order to locate the Bryan, and thereby the Whitehead, the plaintiff called Thomas W. Moore, and proposed to show that the witness had examined the location of two tracts of land in the warrantee names of Benjamin Elliott and John McKissick, the two surveys being returned as made by John Cannon, deputy surveyor, on April 27, 1797; that he found line trees marked along the lines of the McKissick counting to the date of survey; that along the Benjamin Elliott there was no timber standing of sufficient age to bear the marks of 1797, but that he found sufficient original work to establish the location of the McKissick and Elliott, and that the Elliott calls for the old London surveys on the northwest, and for the William King and Samuel Bryan on the southwest; and, in connection with this, the official survey of the John McKissick: The purpose of the offer being to show that John Cannon, the official surveyor, was upon the ground and made the surveys of the Elliott and McKissick, and when he returned the Elliott as lying around the northern angle of the Bryan and commencing at the pine corner of the Bryan, he had the means of knowing whether the Bryan was located on the ground.

Defendant's counsel object to the offer for the following reasons:

1. The McKissick is a survey 12 years junior to the Bryan and Whitehead surveys in controversy, and made by different

surveyors, and is therefore not competent evidence to affect the location of the Bryan and Whitehead tracts.

2. It appearing by the testimony of the witness on the stand, also by the offer, that there are no marks or monuments on the Elliott, of the date of the survey of the said warrants, to wit: April 27, 1797, it is not competent to supply the omission by evidence of marks on the McKissick.

3. The Elliott and the McKissick, being warrants of different dates, are not shown to be a block of surveys, and the marks and monuments of the McKissick are not monuments of the Elliott.

4. It is not competent to determine or affect the location of the Bryan and Whitehead surveys by the proposed evidence, and it is irrelevant to the issue.

By the court: If the evidence embraced in the offer tended to show that John Cannon, the deputy surveyor, in running the line of the Benjamin Elliott in 1797, especially the line claimed by the plaintiff to be the northwestern line of the Samuel Bryan, on the ground, and by the north line recognized the pine corner claimed by the plaintiff to be the northwestern corner of the Samuel Bryan, and such corner being called for by the Samuel Bryan at the point where he marked the pine, we think it would be admissible. We do not think, however, that the offer tends to show the presence of John Cannon at that corner, and for that reason it is excluded and an exception is noted.[1]

The plaintiff then offered an official survey of a tract in the warrantee name of Jacob Way, surveyed on, May 14, 1817, calling for the Richard Whitehead on the north; also the official survey of a tract of land in the name of Henry Floyd, surveyed on May 10, 1820, calling for the Samuel Bryan on the west, surveyed in pursuance of a warrant dated March 15, 1820; also, a survey in the name of Foster Delige, surveyed on November 5, 1853, in pursuance of a warrant dated November 1, 1853, calling for the Samuel Bryan, on the west; to be followed by the evidence of the witness on the stand, that these three tracts are located upon the ground by lines and monuments counting to the date of the respective surveys, and in the position as indicated upon the plaintiff's map, and also, upon the official connected draft, already in evidence; the

purpose of the offer being to show the boundaries of the Bryan and Whitehead as recognized at various dates by the official surveyors in locating subsequent surveys adjoining them, and to show that the entire territory in that region is covered by the official surveys long anterior to the application for the warrant to the defendant given in evidence, and that there was no vacant land there at the time of his application.

Defendant's counsel objected, (1) because the surveys named in the offer of plaintiff were junior in warrant and survey to the Whitehead and the Bryan, and were therefore incompetent to fix the location and the lines of said surveys, certified to have been surveyed many years before. (2) Because the offer did not propose to show that the land embraced in the surveys offered occupied by prior right the land in controversy. (3) Because they were irrelevant.

By the court: The evidence offered is excluded.[2]

At the close of the testimony, the court, SIMONTON, P. J., 12th judicial district, holding special term, charged the jury as follows:

You no doubt understand very clearly and distinctly the nature of the claim of the plaintiff and defendant, respectively, in this case. Perhaps it will make the matter clearer for you, if we say the claim of the defendant and plaintiff as to location; for the plaintiff in the first place, as you will remember, gave in evidence the original title from the commonwealth of the Richard Whitehead tract, and there is no dispute as to his original title; the only dispute is, where the Richard Whitehead is located. The plaintiff having given his title in evidence rested. If the defendant had given no evidence, the plaintiff would have been entitled to a verdict. In that point of view, and to that extent, the defendant has the burden of proof. It was necessary for the defendant to give evidence to show that the Richard Whitehead tract was not located where the plaintiff claims it to be, and hence the defendant's evidence as to location came first. It may perhaps tend to clearness, for us to present it in that way.

You will remember that the defendant's testimony consisted mainly of the evidence of the surveyors, in the first place, as to the work they had found on the ground; their having

gone to what has been called in the course of the trial, the fallen pine, at the northeast corner of Samuel Bryan, as located on the defendant's map. The surveyors told us of starting there, or their arriving there, by running the northwest line; they told us of the chestnut oak on the northwest line, as you see it on defendant's map; of the pitch pine; of the white oak on the eastern line of Samuel Bryan as they claim it to be located; and you have heard and well remember what other evidence they gave as to running around or over other parts of the tract. You will remember, in this connection, the evidence as to the age of those trees, as testified to by them, from their counting the blocks and from the blocks themselves, as they were produced in court; you will also remember the evidence as to the location of the cranberry swamp. The defendant contends that that swamp is called for in the application of the Samuel Bryan, to be within the lines of the survey to be made upon that warrant, and that it is called for to be within the lines of the survey in the return of the survey of the Samuel Bryan. It is not depicted upon the survey, but in the return of the surveyor of the fact of having made the survey, he states he has included the cranberry swamp, and the defendant contends that that is evidence of the proper location of the Samuel Bryan, the warrant calling for the survey to include the cranberry swamp, and the survey made upon it, being said by the surveyor to include it. [You will remember that the Samuel Bryan is involved here, for the reason that it is necessary to locate the Samuel Bryan in order to locate the Richard Whitehead. It is conceded by both sides that the location of the Samuel Bryan will locate the Richard Whitehead.] [6]

You will remember in the same connection, of course, the evidence of the plaintiff as to these same matters; the testimony of the surveyors on cross-examination on behalf of the plaintiff; and the testimony of the surveyors called by the plaintiff as to these trees, and as to their ability to count them to the one hundred years, or so far as they were able to count them, to determine that they were marked for line trees, and their opinions, so far as they gave them, as to their being outside of range for line trees. All the evidence on the subject, given both by the plaintiff and by the defendant, should be taken into careful consideration in determining whether the

location claimed by the defendant is the correct location or not. If you find there was and is a cranberry swamp within the lines of the Samuel Bryan, as it is claimed to be located by the defendant, we say to you, that that would be some evidence of the location; some evidence that that was the correct location. It would of course not be conclusive evidence, but it would be some evidence.

[The plaintiff contends that it would appear, or be readily inferred from the nature of the Richard Whitehead survey, that it was not made upon the ground; and, as it appears from the evidence, that the Richard Whitehead and Samuel Bryan belonged to the same person, the cranberry swamp, even if it is found to exist, would simply be proof of the location of the whole block, and that it is not special evidence of the location of the Bryan. That is to say, that under the facts and circumstances as to the nature of the applications and warrants, the surveys and the work of the surveyor, you might as readily expect to find the cranberry swamp on the Richard Whitehead as on the Samuel Bryan; in other words, that both those warrants and surveys belonging to the same person, he could divide them as he chose; draw the division line wherever he chose and could have them located as he chose; and the calls would be satisfied if the swamp was found anywhere within the outer lines. That might be correct on the question of location of the whole block, between persons who were disputing as to the tracts, but we say to you that it is not quite correct, as to apply to the facts of this case.] [7] We say to you that under the calls of the warrant and return of survey, the finding of the cranberry swamp within the lines of the Samuel Bryan, if you so find, and that is a question entirely for you, would be some evidence of the location of the Samuel Bryan in the way the defendant has located it. It would be some evidence, it would not be strong evidence; not so strong as if you should find as a block, that the surveyor had run the lines between the Samuel Bryan and the Richard Whitehead so near to the swamps that you could readily and properly infer that he came within sight of them; it would not be so strong as it would be under those circumstances, but it would be some evidence.

You are to consider then all the evidence upon the location

as claimed by the defendant. You are to consider also the evidence given by the plaintiff as to the location claimed by him, and depicted on the plaintiff's map. On that map are certain surveys called the London Surveys. The location of these surveys has not been disputed in the case. There is also a survey as you see in the name of William King, which is laid down on that map as adjoining the Samuel Bryan, and there are certain other surveys marked upon that map. Some objection has been made as to that map, and we may as well call your attention to that here. The maps that are put in evidence by the parties are not in themselves evidence; they represent the claims of the parties, plaintiff and defendant, as to location; and you are to determine from the evidence in the case which location is correct, and you are not to accept what they put on the maps, any further than what you find from the evidence to be worthy of acceptance.

The plaintiff claims to start from the pine corner, the northeastern corner of the Samuel Bryan, as represented on his map. He has given in evidence the deposition of Isaac Way, testifying to the fact of a corner having been pointed out to him, which the plaintiff claims is the real pine corner of the Samuel Bryan tract. We admitted that deposition so far as to show, or so far as it tended to prove the fact, that the witness had pointed out to him a corner, which he, owning some of the land, understood to be the Bryan line, and which he claimed too as a corner, and as evidence that some thus claimed that to be a corner. He did not know it was a corner, and you are not to take it as conclusive evidence at all that it was a corner; you can take it as evidence, as far as you believe it, of the fact that a corner existed there, a pine tree being there and the persons having claimed it as a corner. In that connection the plaintiff gives further evidence of the fact that the owners of the land in that region, understanding it to be the line of the Samuel Bryan tract, and their deeds calling for it to be the Samuel Bryan line, claimed to that corner and to the line of which they considered that to be the corner.

The plaintiff gave in evidence various deeds; they also are some evidence of location. The fact that for a long period of time the persons interested claimed that to be their line, and that it was recognized and claimed to be a line by those who

were buying and selling the land, is some evidence of location which you are to consider together with other evidence in the case.

The plaintiff gave in evidence the William King survey, and claims that that furnishes evidence tending to locate the Samuel Bryan as he has located it. The Samuel Bryan survey, as officially returned by the deputy surveyor, at the angle made by the two lines running at 45 degrees, forming a right angle, calls for Mr. Dougherty. The plaintiff gave evidence which you will remember, tending to show that one Bernard Dougherty, was interested in the William King. [You must consider that evidence and determine from that whether the call for Mr. Dougherty was intended for the William King, for the reason that the surveyor understood that Mr. Dougherty was interested in the King, or for any other reason. If you so find, in that view of it, it would be some evidence of location. If that call for Mr. Dougherty, was a call for the King survey, and if the King is located there, that call would furnish some evidence of the Samuel Bryan.] [8] The warrant for the William King was taken out before the Bryan warrant, but the Bryan is returned as being surveyed a few days before the King, and the King was surveyed before the Bryan was returned into the office; and, therefore, the work being done by the same surveyor and within such a short compass of time, it would be a fair inference that the warrants were both in the surveyor's hands at the same time; and we say to you, the call of the Bryan for the King, if it be for the King, if you find the call for Mr. Dougherty was for the King, would be evidence tending to show the location of the Bryan. [In considering that, you should bear in mind that the surveyor in making the Bryan, and in calling for the King at that time, might have intended to do what he did not afterwards do. You will consider what weight you will give to that evidence. If you are satisfied that the call for the Dougherty was a call for the King, the papers being in the hands of the surveyor for the two warrants at the same time, it would be evidence to aid you in determining the location of the Samuel Bryan.] [9] You will consider, in addition to that, all the other evidence in the case given by both parties as to this location.

\*　　\*　　\*　　·\*　　\*　　\*　　\*　　\*

We have called your attention in this general way to the nature of the evidence. We have not undertaken to detail the evidence to you, nor are you to assume that there is no other evidence than this with respect to which we have spoken. As we said before, the case has been thoroughly gone over, and ably argued by counsel and your attention so carefully called to all the items of evidence, that we take it for granted you remember them all. [You are to consider all the evidence in the case, both on the part of the plaintiff and defendant, in coming to a conclusion as to which is the true location of this tract, remembering that when you have the Bryan located, then you have the Whitehead located, because it is agreed that you will find the Whitehead south of the Bryan.] [10]

In connection with the call for the King, we will remind you, further, that while the Samuel Bryan survey, which was made a few days, according to the returns, before the William King survey, calls for the Dougherty to be where the plaintiff claims the King is, the King calling the other way does not call for the Bryan, but calls for Mr. Duffield. You will take that into consideration in connection with the other evidence, and consider how much weight you are to give to the call of the Bryan for Mr. Dougherty, which the plaintiff claims is a call for the King, the King not calling for the Byran, but for Mr. Duffield. There has been no testimony given, that we remember, who Mr. Duffield was, but it is a fact that the King calls for Mr. Duffield.

[We will call your attention further to the fact that the Richard Whitehead survey, as returned by the deputy surveyor on March 9, 1785, calls for William Burge on its western line. You have heard what has been said about the William Burge; the defendant contending that that call was a mistake. It appears, however, that the writ in the case is for a tract of land, " bounded on the south by land in warrantee name of Jacob Way, and on the west by land of George Gates, and on 'the north by other lands of said plaintiff; " and that the application of defendant in this case, for the 100 acres which he claims, sets forth the fact that the land west of where he claims is occupied by George Gates and is the old William Burge improvement. " Adjoining lands of Richard White-

head warrantee on the east, Jacob Way warrantee on the south, the old William Burge improvement now occupied by George Gates on the west;" this is what is stated in the application made by the defendant. This describes the land to be embraced in the warrant for which he applies, and which he claims in this suit. You will consider that together with the other evidence in the case. If he be correct in that,—if the old William Burge improvement be west of the line of the Richard Whitehead, as it was located by the deputy surveyor, and if it be on the west line of the land claimed by the defendant, the western part of the Richard Whitehead, and this land would seem to be on the same ground,—if that were so, then it would be evidence tending to fix the location of the Richard Whitehead where the plaintiff contends it is and the defendant claims he has found vacant land. You will consider that in connection with the other evidence of the case.] [11]

The defendant's counsel requests the court to charge [inter alia]:

4. The location of an older survey is not to be controlled or affected by the call of a younger made many years after and by a different surveyor, and therefore the Benjamin Elliott survey made in 1797, under the proof as to the absence of any marks thereon counting to its date, cannot affect the location of the Bryan survey in 1785.

Answer: We say to you that the location of an older survey cannot be changed by anything that may be done upon a younger, but a younger survey may sometimes aid in determining where the older survey was located. But if there are no proofs of actual work done upon the ground to determine the location of the Benjamin Elliott, if that be left in doubt, then it practically could afford no aid in determining where the Samuel Bryan is located.[3]

The plaintiff has presented the following points [inter alia]:

4. The call of a younger official survey for an older survey is some evidence of where the older survey is located; and this evidence becomes stronger as greater time elapses from the location of the senior survey, thus destroying the primary evidence of where such survey was originally located.

Answer: This, we say, is an abstract proposition, and it may be correct, or it may not, depending upon the circumstances of

the case. There are circumstances under which a younger survey may be evidence of an older, and there may be circumstances under which it may not be.[4]

8. The warrants to Samuel Bryan and Richard Whitehead having been applied for on the same day, viz.: March 9, 1785, and the purchase money for both warrants having been paid by Samuel Daniels, and both warrants having been surveyed on the same day, viz.: November 11, 1785, and returned at the same time, and as adjoining and calling for each other, constitute in law a block of surveys, and the two must be located as one tract. And if the jury find that the division line between the two was not run and marked on the ground, the calls in the return of survey of the Samuel Bryan to include the cranberry swamp would be sufficiently answered, if such cranberry swamp is found within the lines of the entire survey, whether north or south of what would be the division line between the Bryan and the Whitehead.

Answer: As we understand this point, it asks us to say that the swamp might be expected to be found as well on one part of the tract as on the other, and that when you find it, you have no special evidence that the place where it is found is within the lines of the Samuel Bryan. We say to that, that when you find it you have found some evidence of where the lines of the Samuel Bryan are, notwithstanding the fact that the division line was not run; not as strong evidence as if the lines had been run, and not as strong evidence as if the two surveys had not been returned at the same time.[5]

The jury returned a verdict in favor of the defendant. A rule for a new trial having been discharged judgment was entered on the verdict, when the plaintiff took this writ, assigning as error:

1, 2. The refusal of plaintiff's offers.[1] [2]

3. The answer to defendant's point.[3]

4, 5. The answers to plaintiff's points.[4] [5]

6–11. The parts of the charge embraced in [ ] [6 to 11]

*Mr. John H. Orvis* (with him *Mr. C. M. Bower* and *Mr. E. L. Orvis*), for the plaintiff in error:

1. Where there is no conflict between a junior and a senior

survey, there is no reason why the calls of the junior should not be evidence of the location of the senior. All marks made by the original surveyor having disappeared, the recognition by official surveyors through a long course of years, would be some evidence, and probably the only evidence that could be resorted to. In many cases it is important that hearsay or reputation should be received to establish ancient boundaries: Boardman v. Reed, 6 Pet. 328 ; Nys v. Bismeret, 44 Wis. 104 ; Great Falls Co. v. Worster, 15 N. H. 412 ; Smith v. Forest, 49 N. H. 230 ; Wood v. Willard, 37 Vt. 377 (86 Am. Dec. 716) ; Hale v Rich, 48 Vt. 217 ; Hadley v. Howe, 46 Vt. 142 ; McCausland v. Fleming, 63 Pa. 36 ; Kennedy v. Lubold, 88 Pa. 246 ; Kramer v. Goodlander, 98 Pa. 366 ; Sweigart v. Richards, 8 Pa. 436 ; Bellas v. Cleaver, 40 Pa. 268 ; Clement v. Northumberland Coal Co., 87 Pa. 291 ; Northumberland Coal Co. v. Clement, 95 Pa. 126.

2. The plaintiff was entitled to an affirmative answer to his eighth point. The warrants to Samuel Bryan and Richard Whitehead being applied for and issued the same day, viz.: March 9, 1785 ; the purchase money for both warrants paid by Samuel Daniels ; both surveyed on the same day ; and the one calling for the other, they constituted in law a block of surveys and must be located as one tract. The land included in the entire body, being paid for and owned by one person, no division line having been run on the ground, the owner could run such division line as he pleased: Fox v. Lyon, 33 Pa. 474 ; Malone v. Sallada, 48 Pa. 425 ; McDermott v. Hoffman, 70 Pa. 31.

3. The two tracts constitute a block, and are located as one tract. The evidence showing the location of the block shows the location of every part of it. Every mark and monument of the Bryan is a mark and monument of the Whitehead, and every mark and monument of the Whitehead is a mark and monument of the Bryan. The call in the return of survey of the Samuel Bryan to include the cranberry swamp, is sufficiently answered if such cranberry swamp is found within the lines of the entire survey, whether north or south of what would be the division line between the Bryan and the Whitehead: Malone v. Sallada, 48 Pa. 425 ; McDermott v. Hoffman, 70 Pa. 47 ; Eister v. Paul, 54 Pa. 196 ; Pruner v. Brisbin, 98 Pa. 202.

4. If the learned judge were right in submitting the question

of the identity of the call for Mr. Dougherty with the call for William King, he should have given binding instructions to the jury, that if they found that the call of the Bryan for the Dougherty was a call for the King, the Bryan must be located up to the lines of the King, and have them for its western boundary. Instead thereof, the learned court instructed the jury that " that call would furnish some evidence of the location of the Samuel Bryan." If the lines be not actually run and marked on the ground, the survey is to be carried to its calls of adjoiners: Younkin v. Cowan, 34 Pa. 198; Wharton v. Garvin, 34 Pa. 340; Wood v. Appal, 63 Pa. 210; Hagerty v. Mathers, 31 Pa. 348.

*Mr. S. R. Peale* (with him *Mr. Thomas H. Murray* and *Mr. John G. Love*), for the defendant in error:

A junior survey, to be admissible in evidence to affect or aid in fixing the lines of a senior survey, the location of which on the ground is in question, must first furnish evidence that the surveyor who located said junior had knowledge of the true location of the line or lines of said senior survey: Sweigart v. Richards, 8 Pa. 436; Bellas v. Cleaver, 40 Pa. 261; Payne v. Craft, 7 W. & S. 458; Northumberland Coal Co. v. Clement, 95 Pa. 126; Kennedy v. Lubold, 88 Pa. 255; Bender v. Pitzer, 27 Pa. 335; Pruner v. Brisbin, 98 Pa. 204.

OPINION, MR. JUSTICE WILLIAMS:

This case was before us last year, and may be found reported in 121 Pa. 387. We are not asked to reconsider or qualify anything then said, but to consider questions raised on the last trial.

The land in controversy is claimed by the company plaintiff as part of a survey made in 1785, in the warrantee name of Richard Whitehead, now owned by it. The defendant is in under a recent warrant and survey, and insists that the true location of the Whitehead does not include this land. The location of the Whitehead is therefore conclusive of the rights of the parties. It cannot be located by marks on the ground made by the deputy-surveyor to witness the lines, for no such marks are found on any of its boundaries. Resorting next to the adjoiners, we find the Whitehead calls for the Bryan, a survey of the same

date, on the north.    We must therefore locate the Bryan, and, when this is done, locate the Whitehead by it, and along its south line.    Turning, then, to the Bryan, we find two theories of location presented by the evidence: That of the plaintiff, which rests on the white pine corner at its extreme northern end and on the William King, as the adjoiner called for under the name of Dougherty, in the angle' on the west side.    The other, presented by the defendant, rests on marks found upon what is claimed to be the east line, a marked tree found on the northwest line, running from the pine in the direction of the King, and upon a natural monument, a cranberry marsh, called for by the official return as lying within its lines and near its southern boundary.    The question, which of the two extreme northern corners contended for was the place of the white pine returned by the deputy surveyor, was a controlling one; for from this corner, when settled upon, it was easy to locate the survey, and with it the Whitehead.    Upon this question,—the location of the white pine, and the line south from it,—the plaintiff made its offers, the rejection of which is alleged as error in the first and second assignments.

It is very clear that, in a contest between two adjoining surveys, the junior must always give way.    It may have a well-marked line of the proper age for its own survey inclosing it, but the senior will not be affected by it.    It will reach to its own lines, appropriating all within them, and the junior survey will be restricted to what may be thus left for it.    It is therefore correct to say that the lines of a younger survey cannot change, alter, or affect those of an older one when they come in conflict.    Here the question raised is quite different.    The lines of the younger survey, calling for the older as an adjoiner, are offered as showing the acts and declarations of a deceased deputy surveyor as to the location of the line of the older.    There is no conflict between them.    The younger survey asks nothing adverse to the older.    The purpose for which the evidence is offered is not to disturb, but to sustain, the lines of the senior survey, by showing that the sureyor who located the younger tract recognized the lines of the older one as being where it is now claimed they are, and acted upon that belief in doing his work.

The McKissick and the Elliott were surveyed in 1797.    The

former was well located by work on the ground. The latter was located with equal certainty by its adjoiners. It called for the Bryan on its west side, from the McKissick to the white pine at the extreme north corner, and again on the south, extending between the London surveys and the Bryan to the King. At its interior corner a pine is called for, where the Bryan also calls for a pine. If, now, the spot where the survey of the Elliott places the pine can be ascertained, it shows where the surveyor who located the McKissick and the Elliott believed the pine of the Bryan to be, when he did his work in 1797. The fact that no marks of the Elliott were found along these lines, does not show that the surveyor was not upon them. The London surveys and the Bryan were older than the Elliott, and the latter could have no lines except those of the older surveys it adjoined along its entire line of contact with them. The legal presumption that the tract was surveyed as returned must prevail, where there is nothing on the ground to overcome it. The mere failure in surveying a younger tract to re-mark, or to mark in any manner, the line of an older survey, called for as an adjoiner, does not weaken the legal presumption in the slightest degree. If this be so, the offer should have been admitted as showing how the deputy surveyor, in 1797, located the pine corner and the east and north lines of the Bryan, when on the ground to locate the McKissick and the Elliott. It does not follow that his opinion was correct, but its value is for the jury. He may have been mistaken. If there are marks on the ground that locate the lines elsewhere, the marks must control; but, if there are no sufficient evidences of original lines to locate them by, then the opinions of deceased surveyors and deputy surveyors, as shown by their acts and declarations on the ground, are some evidence upon the question of their true location: Sweigart v. Richards, 8 Pa. 436; Bellas v. Cleaver, 40 Pa. 268; Kramer v. Goodlander, 98 Pa. 354.

The second assignment is sustained for the same reasons. The surveys embraced in the offer are of much more recent date, but are nevertheless ancient, being of the ages of 71, 68, and 35 years, respectively, at the time of the trial. They show the official work of different deputy surveyors, made long before the present controversy began, in the location of warrants upon the ground which called for the Bryan or the Whitehead as

adjoiners. They may have been mistaken in their location of the east and south lines of these warrants, and the value of their opinions must be determined, as the value of the opinions of a witness called to the stand would be determined; but the evidence should have been admitted.

The eighth assignment raises the only other question to which it is important to advert. The theory of location presented by the plaintiff depended, in part, on the King, which it was alleged was the survey intended by the call for Dougherty, in the angle on the west of the Bryan. Upon this subject the court instructed the jury that, in case they should conclude that the King was the survey intended by the call for Dougherty, "it would be some evidence of location. If that call for Mr. Dougherty was a call for the King survey, and if the King survey is located there, that call would furnish some evidence of the location of the Samuel Bryan." This was true, but it was not a full presentation of the subject. The general rule is that a survey, in the absence of marks that restrain it, goes to its adjoiners and may be located by them. If, therefore, the jury had found, as this instruction supposed it possible they might find, that the King was called for as an adjoiner on two sides, and was located on the ground as contended for by the plaintiff, this would take the Bryan to the King, unless it was stopped short by work on the ground made for its own lines. Such a finding as was contemplated by this instruction would have located the Bryan against the King, and been a substantial adoption of the plaintiff's theory of location. It was not enough to say, therefore, that a finding for the plaintiff as to the location of the King, and its identity with the Dougherty called for, was "some evidence of the location of the Samuel Bryan;" for such a finding would locate the west side of the Bryan, in the absence of marks on the ground to override the call. It may be, as is suggested by counsel for the defendant, that such a finding would locate the Bryan in such a manner as to exclude the land in controversy; but that was for the jury, and we cannot say that the plaintiff was not injured by the instruction complained of.

The question raised by the fourth assignment has been considered in what has been said upon the first and second assignments, but another word may not be out of place as to the

adequacy of the answer complained of. The plaintiff asked the court to charge that "the call of a younger survey for an older survey is some evidence of where the older survey is located; and this evidence becomes stronger as greater time elapses from the location of the senior survey, thus destroying the primary evidence of where such survey was originally located." The court replied: "This, we say, is an abstract proposition, and it may be correct, or it may not, depending upon the circumstances of the case. There are circumstances under which a younger survey may be evidence of an older, and there may be circumstances under which it may not be." But how was it as to the case trying? What were the jury to understand as to their duty? Were the "circumstances" such as to justify them in applying the general doctrine of the point to this case, and treating the junior surveys as some evidence bearing on the question of the location of the Bryan? Or, were the circumstances of this case of that sort that deprived the younger surveys of any value as evidence on that question? How were they to tell? The answer was neither an affirmance nor a denial of the proposition of the point, as it was applicable to the case trying, and it left the jury with no definite instruction upon the question raised.

Judgment reversed, and venire facias de novo awarded.