# Northumberland Coal Company *versus* Clement.

1. In a controversy as to the location of the division line between two adjoining tracts of land included within two separate adjoining blocks of surveys, the senior block lying north of the junior block, and the official returns of the junior block calling to adjoin the senior block upon the north, marks were discovered upon the ground that clearly define the exterior opposing lines of the respective blocks, but no marks, counting to the dates of the original surveys, were found to establish the common, or division, line of the blocks: *Held*, where surveys have been made and returned as a block, the location of each tract therein may be proved by proving the location of the block. The inquiry is not where a tract should, or might, have been located, but where it actually was located. Every mark on the ground tending to show the location of any tract in the block is some evidence of the location of the whole block, and, therefore of every tract therein.

2. The testimony of practical surveyors of large experience in tracing original lines, and especially the testimony of those acquainted with the marks made by the surveyor who located the warrants, was properly admitted. A surveyor must not be permitted to testify as to the legal interpretation to be given to a survey, yet a practical surveyor may testify whether in his opinion certain marks on trees, piles of stones, or other marks on the ground, were intended as monuments of boundaries.

3. The location of a junior warrant may throw light upon the location of a senior warrant which it calls to adjoin, where the division line between the two was returned as of the same length in each return and where both warrants, having been in the surveyor's hands at the same time, were located by the same surveyor.

June 10th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas of *Northumberland county:* Of May Term 1879, No. 91.

Ejectment, brought by Ira T. Clement against the Northumberland Coal Company, to recover a tract of land situate in Mount Carmel township, Northumberland county, containing about 96 acres.

The trial was had 19th April 1878, before Rockefeller, P. J. It appeared in evidence that the plaintiff, Clement, is the owner of one undivided half part of a tract of land surveyed under a warrant dated June 11th 1793, granted by the Commonwealth in the name of Thomas Billington. Also that the Billington was one of eleven warrants owned by Dr. Thomas Ruston, all dated June 11th 1793, granted in the name of Daniel Reese, Charlotte Ruston, Mary Meyers, John Reynolds, Thomas Billington, Mary Ruston,

Thomas Ruston, Mary Ruston, Jr., John Young, Joshua Bean, and Samuel Lobdill. These lands are now generally known as the Brush Valley lands. The Daniel Reese, situate at the western end of the series, is the leading warrant, and calls for the Charlotte Ruston on the east; while the Charlotte Ruston calls for the Daniel Reese on the west. Each of these warrants, from the Reese to the Lobdill, calls alternatively for the adjoining warrant, proceeding from west to east in the order given above. Surveys were made under the first four of these warrants on the 2d October 1793; the return of the Billington survey does not show upon what day it was made, though the Mary Ruston, which adjoins it on the east, was surveyed on the same day, the 2d October, and the last five tracts upon the following day, the 3d October 1793. A certified copy of the returns of surveys showed that these eleven surveys had all been returned into the land office by William Gray, deputy-surveyor, on the 3d March 1794; at which time the Thomas Billington tract was said to contain 411 acres. The plaintiff contended that these surveys were made and returned as a block. The evidence showed that the Thomas Billington tract was patented the 18th October 1794, and that one equal undivided half part of the said tract became vested by sundry mesne conveyances, in Ira T. Clement, the plaintiff. There was no dispute as to the plaintiff's title to so much of the tract.

The evidence further showed the defendant, the Northumberland Coal Company, to be the owner of a tract of land, containing $371\frac{1}{4}$ acres, surveyed in the warrantee name of Lewis Walker, lying directly south of the Thomas Billington tract, and also showed that the Lewis Walker warrant was one of four, granted by the Commonwealth to Ebenezer Branham, Nathaniel Brown, Lewis Walker, and William Elliott, all of which are dated the 26th November 1793, under which surveys were made on the 21st and the 22d October 1794, and returned into the land office, by William Gray, deputy-surveyor, February 23d 1795. These four tracts, now generally known as the Lefevre lands, extend along the Brush Valley lands, on the south, throughout their entire length, and the official returns of these surveys call for the Brush Valley lands upon the north. There was no dispute as to the defendant's title to the Lewis Walker tract.

The controversy arose as to the location of the line that divides the Billington tract from the Walker tract, and defines the southern limit of the former and northern limit of the latter; the plaintiff contending that his survey, *as marked upon the ground*, includes the land described in this writ of ejectment, while the defendant asserted his right to extend his claim as far north as the southern line described in the official return of the Thomas Billington tract, which the Walker survey calls to adjoin on the north, thus confining the plaintiff, by courses and distances, to the official return of

*Draft showing the Relative Locations of the Brush Valley Lands and the Lefevre Lands.*

his survey and disregarding the marks said to have been found upon the ground.

Many surveyors were called, by either side, who testified that the northern lines and corners of the eleven tracts composing the Brush Valley lands are well defined by marks still existing upon the ground, made at the time of the original survey in 1793; they all agreed as to the northern line and northern corners of the Thomas Billington tract. Along their southern boundary line, these eleven surveys call for post corners in every case excepting one corner, which forms the southern limit of the division line between the Thomas Billington tract and the John Reynolds tract; these tracts call for a small maple tree as a common corner, it being the southeast corner of the Reynolds tract and the southwest corner of the Billington tract. There was a conflict of evidence as to whether the position of this maple had been established by the surveyors, and the question of its true position was submitted by the learned court to the jury. No original marks were found by the surveyors in running either the southern line of the Brush Valley lands, unless it be this maple corner; nor were there any original marks upon either of the division lines between the eleven tracts except upon the line between the Reynolds tract and the Billington tract. Upon this line the surveyors found a white pine tree and a hemlock tree each marked at the date of the original survey. In regard to the maple tree, called for as a common corner by the Reynolds and the Billington tracts, the defendant introduced the testimony of David Rockefeller, a surveyor, who had run this division line in the year 1847. He testified that he found the line well marked upon the ground, corresponding with the dates of the original surveys, and that, in running from the northern corner, and making allowance for the rugged character of the land, he found at the end of the official courses and distances a small maple stump, with maple sprouts growing about it, and a maple tree lying upon the ground. The defendant asserted that this is the true location of the maple tree called for as the common corner, though the tree found by Rockefeller lying upon the ground was too much burned, and otherwise disfigured, to show whether it had ever been marked by surveyors or not. But the plaintiff's surveyors testified, in rebuttal to this, that the maple sprouts found by Rockefeller were situated not only about eight rods short of the official distance of the division line between these two tracts, but were also about seven rods out of the official course, and that similar clumps of the maple sprouts are frequently to be met with upon the mountain in that vicinity.

It appeared, from the evidence, that the land in controversy would not be included in the Thomas Billington tract, but would lie beyond it, and would extend seventy-two rods further south, if the lines of that tract were run according to the official courses and distances as they were returned by the deputy-surveyor. And it

14 NORRIS—9

[Northumberland Coal Co. *v.* Clement.]

also appeared that if the southern line of the Billington tract were run as the defendant asserted it should be run, so as to make a corner at the point where Rockefeller found the maple sprouts spoken of by him, the land in dispute would be excluded.

The plaintiff introduced the testimony of John Fisher, who had run the division line between the Reynolds and the Billington tracts in the year 1814, in company with Henry Donnel, the county surveyor at that time of Northumberland county. He testified that, at the southern end of this line, the southwest corner of the Billington tract, they found a stone corner and a post, situate near a swamp, at a distance of sixty or seventy rods south of the point now known as Rockefeller's maple sprouts. Henry Donnel had been an assistant to William Gray, the deputy-surveyor, at the time the surveys of the Brush Valley lands were made, and he was employed by Gray in making various surveys in that part of Northumberland county. The plaintiff offered to prove by the witness, John Fisher, that Henry Donnel told him, while they were surveying the western line of the Thomas Billington tract in 1814, that the stone corner they found at the southwest of the Billington tract was where he had located that corner some twenty years before ; this for the purpose of showing where the original corner was, and to establish the southern line of the tract as originally located. This offer having been objected to by the defendant, was rejected by the court upon the ground that, as there was no evidence to show that Henry Donnel made the original surveys, his declarations twenty-one years after the surveys were made are not admissible. The court sealed a bill of exceptions for the plaintiff.

But, in order to prove that the southern line of the eleven tracts composing the Brush Valley lands, and consequently also the southern line of the Billington tract, was run at the time of the original survey and marked upon the ground, far enough south of the courses and distances given in the official return to include the land now in dispute, the plaintiff had recourse to the location of other surveys in the block of eleven as well to other prior and subsequent surveys made by the same deputy-surveyor, William Gray, almost at the same time ; he contended that what the surveyor did in locating these other surveys must be taken as some evidence to be submitted to the jury, and to be considered by them in determining whether the southern lines of the eleven tracts were actually located upon the ground or not.

One of these surveys was made by William Gray and returned the 10th September 1793, in the warrantee name of Francis West, a few days before the Brush Valley tracts were surveyed, as their returns show. The Francis West tract lies east and south of the Samuel Lobdill, the easternmost of the Brush Valley tracts, and it appeared in evidence that its lines and corners were marked upon the ground. Another survey was made on the 23d February 1794,

under a warrant granted in the name of Richard Martin, and dated January 22d 1794; it appeared that its northern, eastern and southern lines were marked upon the ground. The Martin survey calls for the Samuel Lobdill survey on the west. The plaintiff contended that the Lobdill survey was one of a block of surveys, that its southern line was actually run upon the ground a number of rods south of its official courses and distances, and that if he proved this, by means of these other surveys, he should have a starting point that must control the location of the whole block. There is a post by a pine tree at the southwest corner of the Francis West survey called for in the official return, and this same post by a pine is called for also as the southeast corner of the Richard Martin survey. From this corner the official course of the Martin survey is north 89¾ degrees west, 309 perches, and the surveyors all testified that they found upon this line a pitch pine tree counting to 1794, that was marked as a line tree, and establishes the southern line of the Martin survey. The plaintiff extended this line, in its official course, the official distance, to the point where it would intersect the western line drawn from the northwest corner of the Richard Martin survey, and he asserted that this point must establish the southwest corner of the Martin survey; and, as the Richard Martin calls for the Samuel Lobdill survey on the west, the plaintiff contended that this is some evidence that the Samuel Lobdill survey was located at that place by the surveyor in 1793. It appeared that the eastern line of the Richard Martin survey, as marked upon the ground, is longer than its official distance, and consequently its western line must also be lengthened if drawn to intersect the southern line running west from the post by a pine corner. And it appeared also that, if the southern line of the eleven Brush Valley tracts were run upon the ground, starting from the point thus obtained as the southeast corner of the Samuel Lobdill survey, and following its courses and distances, as the plaintiff contended this line was run in 1793, the land in dispute would be included in the Thomas Billington survey. There is still another survey, lying south of the Francis West, the Richard Martin and the Samuel Lobdill surveys, which was made on the 21st October 1794, under a warrant granted in the name of Ebenezer Branham, dated the 26th November 1793, referred to above as one of the Lefevre tracts; it calls for a post by a pine in its northern line, and this the plaintiff alleges to be the same corner that is called for by the Francis West and the Richard Martin surveys as their common corner, and that the surveyor adopted that post by a pine corner in locating the Ebenezer Branham survey; and also that he adopted the line of the Richard Martin survey as marked upon the ground a few months before. The Ebenezer Branham survey calls for the Richard Martin on the north, and it calls also for the Samuel Lobdill. The plaintiff contended, therefore, that

if the Branham survey were established either by marks made by the surveyors upon the ground, or by the monuments called for by it, its call for the Samuel Lobdill would be some evidence that that survey was located upon the ground. The defendant asserted that the southern line of the Brush Valley tracts was never run and marked upon the ground by the deputy-surveyor in making the original surveys, and all the surveyors called for the defence testified that there are no original marks upon it corresponding to the dates of the surveys, although they ran for a distance of seven miles through timber old enough to have been marked at the time for line trees and corners.

The plaintiff introduced, in this connection, the testimony of Abraham Shipman, who, upon being asked, under objection and exception, where, in his opinion as a surveyor, the southern line of the eleven surveys of October 1793 was located by the deputy-surveyor, testified that the best authority he could find for its location was to begin at the post at the southeast corner of the Martin survey and run westward, following the courses and distances, to the pine line-tree at the south of the Martin, that being exactly in the official course ; also, that he could not locate the southern line of the eleven tracts, according to their official courses and distances, without ignoring this pine tree, and that if the southern line of the eleven tracts were run by the official courses and distances from the post by a pine corner and by the pine line-tree at the south of the Martin survey, the distance of the south line from the north line of the eleven tracts would be greater than that given in the official return of these surveys. This witness also testified, on behalf of the plaintiff, under objection and exception, that he found that the lines in William Gray's surveys generally overrun the official distances, where there are lines of mountain surveys and run from one mountain to another, as in this case they do. This was offered as some evidence of the original location of the line between the Brush Valley lands and the Lefevre lands.

The court submitted to the jury the questions whether the eleven tracts composing the Brush Valley lands were surveyed in a block ; also, whether the place where the maple stump and maple sprouts were found is the original location of the common corner between the John Reynolds survey and the Thomas Billington survey, and whether the southern line of the Thomas Billington survey was run upon the ground or not, and where it was run, if run at all. In regard to locating the southern line of the Brush Valley lands by means of the Martin and the West surveys, the court charged the jury, inter alia : " But what the surveyor did in locating these two surveys, the Richard Martin and the Francis West, is submitted to you to be considered by you, with all the other evidence in the case, in determining the question whether the southern lines of the eleven tracts were actually run upon the ground or not ; and, if so,

where they were run, and I will repeat, that nothing that was done by him in the location of these two surveys, the Martin and the West, is to have, or can have, the effect of extending the Lobdill survey, but .is only submitted to you as some evidence of what he did upon the ground in 1793 in locating the other eleven tracts."

Verdict for the plaintiff and judgment thereon.

The defendant then took this writ, and filed nine assignments of error, among which were the charge of the court as stated above, and the following: The court below erred, 1. In receiving the evidence offered by the plaintiff below, as follows : " Plaintiff's counsel propose to ask the witness, Judge Shipman, where, in his opinion as a surveyor, the southern line of the eleven surveys of October 1793, was located by the deputy-surveyor ?" 2. In receiving the evidence offered, as follows: " Plaintiff .proposes to show by the witness, Abraham Shipman, what the excess in lines in William Gray's surveys, in the neighborhood of these blocks, has been found to be."

*Joshua W. Comly* and *William H. M. Oram*, for plaintiff in error.—As to the first assignment of error. The witness was asked his opinion, as a surveyor, where the southern line of the eleven surveys was located by the deputy-surveyor. This was simply asking him how a line which the deputy-surveyor did not run and mark upon the ground ought now to be located. It is a purely legal question which the witness was not competent to answer. The court permitted him to decide it, and he decided that the line ought not to be run where the official returns of the surveys call for it, but that it should be controlled by the location of the junior adjoining survey of Richard Martin. This was not good law : Clements *v.* The Northumberland Coal Co., 6 Norris 291; Carbon Run Improvement Co. *v.* Rockafeller, 1 Casey 49; Manhattan Coal Co. *v.* Green, 23 P. F. Smith 310.; Bellas *v.* Cleaver, 4 Wright 260. Nor was the opinion of the witness competent evidence: Ormsby *v.* Ihmsen, 10 Casey 462.

As to the second assignment of error. Where lines are found run upon the ground, which may or may not have been run for the survey, and objection is made to their being established as lines of the survey, on account of the excess of land that the survey would then contain, evidence of similar excess in ·surveys made by the same surveyor has not been received to meet such objection ; but such evidence is not generally admitted as competent in questions of location, nor is it ever admitted except under peculiar circumstances that do not exist in this case.

All the surveyors testified that, in their opinion, the south lines of the eleven surveys had not been run by the deputy-surveyor upon the ground. The fact that these surveys call for posts at sixteen corners along their southern lines, running through a well-

wooded country, is, of itself, strong evidence that those corners were imaginary: Woods *v.* Ingersoll, 1 Binn. 150.

The survey of the Thomas Billington tract became valid twenty-one years after it was returned into the land-office for all the land contained in that survey, according to the courses and distances so returned: Fritz *v.* Brandon, 28 P. F. Smith 342, 355.

The post corner by a pine was made for the southwest corner of the Francis West survey some twenty-two days before the surveys of the eleven tracts were commenced, and after they were finished there was a mile of vacant land lying between the Francis West and the Samuel Lobdill, the nearest of the eleven tracts. When the latter surveys were made, there was no connection between them and the Francis West by location, by contiguity, by call or by common ownership, and it was only when the surveyor occupied the vacant land between the Samuel Lobdill and the Francis West, by the location of the junior survey of Richard Martin, that the post by a pine corner could possibly have any connection with the south lines of the eleven tracts. But, if they were run upon the ground at all, it was done previously to this connection, and the marking of this post corner by a pine could have no share in locating the lines, or power to prove that they were run upon the ground.

The south line of the Richard Martin passes through a rugged country for 318 perches, but the surveyor never ran more than 64·6 perches of this land, and marked at that place a pine as a line-tree. He finished it by protraction, and called for a post at the southeast corner of the Samuel Lobdill, thus making the east line of the Lobdill and the west line of the Martin identical, and, in the return of the Richard Martin, he describes the western line as 320 perches in length; that is, he calls for a post as the common corner of the Martin and the Lobdill surveys at precisely the same point where he placed the southeast corner of the Samuel Lobdill, in the return of that survey. He supposed that his south line, that he continued by protraction from the pine witness, would intersect the line coming down from the northeast corner of the Samuel Lobdill tract at the distance of 320 perches from that northeast corner. But he was mistaken in this; for he had made a mistake in running the west line of the Francis West tract, and had described that line in his return as 250 perches long, though it is found by the surveyors to be really 280 perches upon the ground to the post by a pine corner. When he adopted this line as the lower east line of the Richard Martin survey, he adopted the error in length also, and returned this line of the Richard Martin survey as 250 perches long. It is conceded that the south line of the Richard Martin is marked upon the ground, running from the post corner by a pine, its official course, until it intersects the western line from its northwest corner. But this corner formed by this

[Northumberland Coal Co. v. Clement.]

intersection cannot affect the southeast corner of the Samuel Lob-dill survey, or determine the south line of the Thomas Billington tract, for this would clearly be extending older surveys in conse-quence of the acts and mistakes of a deputy-surveyor committed in locating a younger survey: Clement v. The Northumberland Coal Co., *supra;* Carbon Run Improvement Co. v. Rockafeller, *supra;* Manhattan Coal Co. v. Green, *supra.* But even if the eleven surveys be considered as having been made in a block, and if the mistake in measuring the lower east line of the Richard Martin survey could lengthen the Samuel Lobdill tract by about 30 perches, it would be unreasonable to continue this error in measurement in such a manner as to extend the Thomas Billington tract 72 perches further south than its official return, and to carry the error of the Martin survey through a whole tier of surveys that were made before the warrant for the Richard Martin had been granted by the Commonwealth.

*T. H. Purdy* and *S. P. Wolverton,* for defendant in error.— As to the first assignment of error. The question answered by the witness, Abraham Shipman, was the following: "Look at the map and state, from the examinations you have made, where, in your opinion, the southern line of this block of eleven tracts called the Brush Valley tracts, was located." This involved no legal propo-sition, but only required him to state from his experience as an expert surveyor, where the survey originally located the southern line of these tracts. Nor is this an unusual question: Davis v. Mason, 4 Pick. 156; Peterborough v. Jaffrey, 6 N. H. 464.

Mere abstract opinion is not evidence, but a surveyor, or any other person conversant on the subject, may state facts, and his opinion on those facts, to enable the jury to form a correct judg-ment of the matter in dispute: Lessee of Forbes v. Caruthers, 3 Yeates 557. A surveyor may state where he would locate a war-rant similar to that under which the party holds: Farr v. Swan, 2 Barr 245.

As to the second assignment of error. The Brush Valley sur-veys would contain much less land than was returned by the surveyor, if they were located, as the defendant below contended they should be, by taking the maple sprouts as a monument upon the southern line of the block. All the surveyors testified that this corner is eight rods short of the official distance. Counsel for the plaintiff below contended that this corner should be placed forty rods further south, near a swamp, and assigned as a reason for doing so, that the defendant's alleged location would not only lessen the official quantity of land in the Brush Valley block, but would very greatly increase the quantity contained in the Lefevre block. As bearing upon this question, the plaintiff showed, by the testimony of surveyors, that all the lines run in this block and

upon adjoining surveys, where monuments are found, exceed the official lengths given in the returns of surveys. Whether it be the theory of the defendant's counsel that the southern line should be established by running east and west by these maple sprouts, or by the exact official distance of the survey, this testimony was not only relevant, but also very important. It is well known that an excess was thrown into surveys made about the time these lands were located, and that all the lines upon the ground are found to overrun the official distances. The practice of including a quantity of land, exceeding ten per cent. more than the warrant. called for, was sanctioned by the proprietaries' land officers, and has been recognised by repeated Acts of Assembly: Layton *v.* Paull, 5 Watts 465.

The plaintiff owns the Thomas Billington survey, which is one of a block, *i. e.*, the Brush Valley block; and the defendant below owns the Lewis Walker survey, also one of a block called the Lefevre block. The question is: Which survey covers the land in dispute ? The southern line of the Lefevre block is well marked upon the ground, as also the north line of the Brush Valley block. In the exact course of the Richard Martin and the Ebenezer Branham surveys, there is a well-marked pine line-tree, counting to 1793. This undoubtedly fixes the line between the Martin and the Branham, and not only that, but it establishes the whole northern line of the Lefevre block in which the Branham and the Walker surveys are included. By continuing this line westward from the pine line-tree, its official courses and distances, the land in dispute is excluded from the Walker survey. Any other location of this line would distort the figures of the surveys. The result of the location asserted by the defendant below would be, to produce an offset of about thirty perches at the line between the Martin and the Lobdill tracts, where Gray returned a straight line, and also to increase the width of the Walker tract about sixty perches, thus increasing its quantity of land by about eighty per cent.

The pine line-tree between the Branham and the Martin surveys was marked in two places, and may have been marked, according to the testimony of the surveyors, either when the eleven tracts were surveyed, or, possibly, both when the Martin survey was made and again in the same year, when the Lefevre block was located. In either case, it is without question a common line-tree between the Richard Martin tract and the Lefevre block. It is well settled that where surveys were originally made and returned into the land office, as a block, they must be located upon the ground as a block : Hagerty *v.* Mathers, 7 Casey 355; Darrah *v.* Bryant, 6 P. F. Smith 69 ; Mathers & Boynton *v.* Hagarty, 1 Wright 64 ; Fritz *v.* Brandon, 28 P. F. Smith 351; Mock *v.* Astley, 13 S. & R. 382; Hole *v.* Rittenhouse, 1 Casey 491 ; Malone *v.* Sallada, 12 Wright 425.

The pine line-tree of the Martin survey was clearly adopted for

the Lefevre block. Lines marked upon the ground constitute the actual survey and control the return; the defendant is therefore bound by this fixed line marked upon the ground: Hall v. Tanner, 4 Barr 244; Walker v. Smith, 2 Id. 43; McGinnis v. Porter, 8 Harris 80.

In locating a junior warrant the deputy-surveyor may adopt the marks of an older survey instead of confusing evidence by making new ones; and when such marks have been adopted, the line of the junior survey is as effectually located as if it had been actually marked upon the ground: Dreer v. Carskadden, 12 Wright 38; Caul v. Spring, 2 Watts 390; Martz v. Hartley, 4 Id. 261; Schnable v. Doughty, 3 Barr 392; McBarron v. Gilbert, 6 Wright 279; Bellas v. Cleaver, 4 Id. 267.

[The Reporter is indebted to the Editor of the Weekly Notes of Cases for this valuable report.]

Mr. Justice MERCUR delivered the opinion of the court, October 4th 1880.

When original surveys have been made and returned as a block into the land office, the location of each tract therein may be proved by proving the location of the block. In ascertaining the location of a tract the inquiry is not where it should or might have been located, but where it actually was located. Every mark on the ground tending to show the location of any tract in the block is some evidence of the location of the whole block, and therefore of each tract therein: Hagerty v. Mathers et al., 7 Casey 348; Malone v. Sallada, 12 Wright 425; Darrah v. Bryant, 6 P. F. Smith 69; Fritz v. Brandon, 28 Id. 351.

This contention is as to the location of a tract surveyed in the name of Thomas Billington. It is one in a block of eleven tracts, for which warrants issued on the 11th of May 1793. They were all owned by one person. The surveys made by virtue thereof were all returned to the office of the surveyor-general on the 3d of March 1794. The block begins with the Daniel Reese on the west, and ends with the Samuel Lobdill on the east. The official returns show the surveys of the first four, and of the sixth, in order, to have been made on the 2d of October 1793. The return of the Thomas Billington, which tract is the fifth in the block, omits to state the precise date of its survey, further than that it was in 1793. It is, however, fair to presume it was made on the same day as the John Reynolds, on the west, and the Mary Ruston, on the east. The remaining five tracts were surveyed on the day next thereafter. The Richard Martin, which lies east of and adjoining the Samuel Lobdill, was surveyed on the 23d of February 1794, on warrant dated the 22d of the month preceding. The Lewis Walker, under which the plaintiff in error claims, lies south of and adjoining the Thomas Billington, and was surveyed

on the 22d October 1794, and return thereof made on, the 23d February following.

Nearly ninety years have passed since the Billington warrant was located. Time has effaced many marks of the survey. Those which were distinctly visible have, to a considerable extent, become obliterated or destroyed. The location of the northern lines of the Billington tract, and of the block of which it forms a part, is unquestioned. They are found distinctly marked on the ground. The main question is, where was the south line of the Billington tract located ?

The testimony of practical surveyors of large experience in tracing original lines, and especially the testimony of those acquainted with the marks made by the surveyor who located the warrants, was properly admitted. It is true a surveyor must not be permitted to testify as to the legal interpretation to be given to a survey, yet a practical surveyor may testify whether in his opinion certain marks on trees, piles of stones, or other marks on the ground were intended as monuments of boundaries : Whart. Ev., sect. 444; Davis *v.* Mason, 4 Pick. 156; Lessee of Forbes *v.* Caruthers, 3 Yeates 527; Ormsby *v.* Ihmsen, 10 Casey 462.

The practical knowledge and experience of the surveyor, whose opinion was asked, are unquestioned. The facts proved were amply sufficient to enable him to form an opinion as to the actual location of the warrant. We will refer to some of them. The official survey of the Thomas Billington calls for a small maple as its southwest corner. Maple sprouts are found at the place claimed by the defendant in error to be the southwest corner of the tract. The original surveys of all these tracts were made by Henry Donnel, acting as a deputy-surveyor. It is shown that the same Donnel in 1814, in running the northern line of the Lewis Walker tract, fixed the line between it and the Thomas Billington to be where it is now claimed by the defendant in error. The official survey of the Richard Martin calls for a white pine tree in its south line. That tree is standing and identified. That warrant was located by the same surveyor, and the return of survey was made three days before the survey of the Billington tract was returned. It calls for the Samuel Lobdill on the west, and the line between the tracts is of the same length in each survey. He had the warrants in his hands at the same time. The location of the latter throws light on the former. The location claimed by the defendant in error for the Billington is not only in harmony with the block of surveys of which it forms a part, but also with the location of the Richard Martin made by the same surveyor soon thereafter.

Without referring to the evidence more in detail, we think it was sufficient to submit to the jury to find the true location of the tract, and that it was properly submitted by the learned judge. We discover no error in the record.

Judgment affirmed.