Earl F. ANDERSON, Jr., Patricia A. Rosenberger, Howard W. Anderson, Larry G. Loocke, William B. Strickland and Michelle B. Strickland, Appellants,

v.

The LITKE FAMILY LIMITED PARTNERSHIP, Appellee.

Superior Court of Pennsylvania.

Submitted Jan. 26, 2000.
Filed March 13, 2000.

Charles A. Schneider, State College, for appellants.

Jeffrey W. Stover, Bellefonte, for appellee.

Before POPOVICH, EAKIN and OLSZEWSKI, JJ.

OLSZEWSKI, J.:

¶ 1 Appellants appeal from an order and *decree nisi*, entered by the Court of Common Pleas, Centre County, that denied their attempt to eject appellees from a tract of land. We affirm.

¶ 2 The trial court summarized the factually tortuous case as follows:

> In 1794 Joseph J. Wallis allegedly surveyed two separate blocks of warrants now located in Curtin Township, Centre County. These blocks have come to be known as the "Reese block" and the "Davis block." It is [appellants'] contention that the Reese and Davis blocks were contiguous in 1797 and remain contiguous. It is the contention of [appellee] that the blocks were not contiguous; rather, a gap or "gore" existed because Wallis did not actually go into the field to perform the surveys or through an honest series of errors. The "gore" allegedly existing between the two blocks of warrants was filled by new warrants granted by the Commonwealth in the middle 1800's including a warrant issued to John P. Mitchell in 1866 surveyed the same year, and a warrant issued to Job W. Packer in 1864 also surveyed in 1866. The Lindsay Coates Warrant[, the warrant at issue,] was surveyed by Wallis on May 16, 1794, by virtue of a warrant dated November 25, 1793. Coates lies within the Reese block. The Mary Tallman Warrant was surveyed on August 25, 1794, as a result of a warrant dated April 27, 1793. Tallman lies within the Davis block. Therefore, while Tallman is the senior warrant to Coates, Coates was surveyed three months prior to Tallman.
>
> The Coates survey ... described a triangular parcel through which a stream and a stream tributary met at nearly a right angle, and referred to vacant land to the west. When Tallman was surveyed three months later, Wallis showed a rectangular parcel ... adjoining Coates on the west and Fishburn Warton on the south. The Warton Warrant was surveyed on August 25, 1794 ... and showed Coates lying to the east and Tallman to the south. The northernmost point of Coates is designated by a "pine" as is the northeast corner of Warton. The southeast corner of Warton and the northeast corner of Tallman are both designated by a "black oak" which black oak is also referenced in the Coates survey. The southeast corner of Tallman is designated by a "pine" which pine is also referenced in the Coates survey. The eastern line of Warton ... and the eastern line of Tallman ... correspond with the length of the western line of Coates ... based upon the Coates survey which shows Coates extending slightly below Tallman. In 1851 the David McCloskey Warrant was surveyed showing Coates to the north and Thomas Hale ... to the west.

Trial Court Opinion, 2/16/99, at 2–4 (citations omitted). The subject of the instant dispute is which party has title to the land immediately west of the Tallman warrant. Appellants argue that the evidence submitted at trial was sufficient to positively locate the Coates warrant adjacent to the Tallman warrant.

■ ¶ 3 Our scope of review for cases tried without a jury is

limited to a determination of whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. Findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent error of law or abuse of discretion. When this Court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected.

*Behar v. Frazier*, 724 A.2d 943, 946 (Pa.Super.1999). Since this is an action in ejectment, plaintiffs carried the burden of establishing by a preponderance of the evidence where the Coates warrant lay. *See Doman v. Brogan*, 405 Pa.Super. 254, 592 A.2d 104, 108 (1991). After observing two expert witnesses and reviewing a mass of exhibits, the trial court ruled that, due to an inconsistency between a topographical map and other submitted evidence, it could not determine the location of the Coates warrant. Because plaintiffs had not met their burden of proof, the trial court ruled in favor of appellee. After reviewing the record, trial transcripts, relevant case law, and keeping in mind our standard of review, we are constrained to agree with the trial court that the appellant failed to meet its *prima facie* case.

¶ 4 In addition to failing on a factual basis, we also hold that appellants claim fails as a matter of law. Appellants concede that the "official dimensions [of the Coates warrant] do not carry it to the adjoining block[s of the Tallman and Warton warrants]." Appellants' brief, at 14. Appellants, however, contend that the case, *Northumberland Coal Company v. Clement*, 95 Pa. 126 (1880), held that when a property's official dimensions do not carry it to the boundaries as marked upon the ground, then the property lines will be extended to the marked boundaries. Appellants' brief, at 14, 17. While initially compelling, we cannot agree with this argument as several of our Supreme Court cases concluded otherwise.

¶ 5 First, in *Bellas v. Cleaver*, 40 Pa. 260 (1861), plaintiff contended that two junior warrants called for his boundary to adjoin theirs. The official dimensions of plaintiff's warrant, however, failed to reach the junior warrants. Therefore, to allow plaintiff to succeed in his ejectment action, the court would have to grant plaintiff more land than his warrant had entitled him. This the Court refused to do. The Court held that the calls in junior surveys have no effect to enlarge the boundaries of an older survey. To hold otherwise,

would have the effect to change and enlarge surveys even after, as in this case, a patent had issued. It would introduce lines neither returned by the deputy surveyor, nor to be found in the patent. It would pass lands not sold by the commonwealth, and without her consent, and without paying to her the purchase-money. It would ignore the orderly mode of changing a boundary by an order of resurvey, a consequence of which is, payment for any increase of land, and an official return of the new survey.... **Gores will exist wherever vacant land lies between the marked lines of approximating surveys;** and we do not advance a step to prevent this by unhinging the settled law, which presumes the location to have been made as returned after twenty-one years, thus establishing boundaries. They will necessarily exist when lines on the ground exclude land between surveys. **If evil arise from gores, it cannot be helped in such circumstances, and the commonwealth being the proprietor, has the sole right to appropriate them to parties willing to buy and pay for them.**

*Bellas v. Cleaver*, 40 Pa. 260. Therefore, contrary to appellant's assertion, a senior warrant's official boundaries will not be

extended to satisfy a junior warrant's call to adjoin it.

¶ 6 As *Bellas* chronologically precedes *Clement*, the latter can be said to overrule the contrary holdings of the former. Nonetheless, a later case, *Mineral R.R. and Mining Co. v. Auten*, 188 Pa. 568, 41 A. 327 (1898), reasserts the points of law espoused by *Bellas*, therefore making *Bellas* once again valid law. *See id.* at 329–30.

¶ 7 Appellants rely upon *Clement* to increase the boundaries of the Coates warrant such that Coates would adjoin the Fishburn and Tallman warrants. The rules of law discussed in *Bellas* and *Auten* prohibit the enlargement of properties under the circumstances in the instant case. It appears that for the past 150 years, people have relied upon the presence of a gore between the Reese and Davis blocks. In fact, in the mid–1800's, numerous new warrants were issued based on the gore's existence. Appellants have failed to produce sufficient evidence or case law to convince this Court to nullify these warrants. Accordingly, we agree with the trial court's ruling that appellants did not meet their burden of proof as of fact or law.

¶ 8 Our disposition of the first question negates our discussion as to whether certain tax consequences affect appellants' title to the land at issue.

¶ 9 Order **Affirmed.**