J-A04013-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| BRIAN S. COLQUHOUN AND KATHLEEN S. COLQUHOUN, HUSBAND AND WIFE AND RODNEY B. MCADAMS AND BRENDA J. MCADAMS, HUSBAND AND WIFE, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | |
| v. | |
| LARRY L. STEFANICK AND LILIAN R. STEFANICK, HUSBAND AND WIFE, | |
| Appellants | No. 764 WDA 2014 |

Appeal from the Order April 15, 2014
In the Court of Common Pleas of Mercer County
Civil Division at No(s): 2012-57

BEFORE:  BOWES, OLSON, and STRASSBURGER,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED APRIL 17, 2015**

Larry L. and Lilian R. Stefanick appeal from the April 15, 2014 order granting a request for ejectment and permanently enjoining them from entry on a strip of land that traverses property owned by Appellees Brian S. and Kathleen S. Colquoun and Rodney B. and Brenda J. McAdams.  After careful review, we affirm.

In order to properly understand this appeal, we first reproduce the map that appears on page two of the trial court's March 28, 2014 opinion.

_____

* Retired Senior Judge assigned to the Superior Court.



The land at issue in this matter is marked on this map as the Disputed Railroad Line. It is sixty-six feet wide, and is a portion of what used to be a longer railroad track. The Disputed Railroad Line is located between the properties owned by Appellees. The present appeal does not relate to the part of the railroad line on Appellants' real estate. The northern boundary of the Colquhouns' land is the southern boundary of the Disputed Railroad Line while the northern boundary of the Disputed Railroad Line is the southern boundary of the McAdams' property. The Disputed Railroad Line is a portion of a parcel that was referred to as Railroad Parcel Four in deeds in the pertinent chain of title.

Appellees instituted this action on January 6, 2012 as a quiet title action. Eventually, they filed a third amended complaint containing two counts, a count in ejectment and another count in trespass seeking monetary damages caused by Appellants' trespass onto the Disputed

Railroad Line. Appellees averred that they were the legal owners and entitled to immediate possession of the Disputed Railroad Line since it was a railroad right-of-way previously owned by Sharpsville Railroad Company and expressly abandoned by that entity. They contend that fee simple ownership of the Disputed Railroad Line reverted to their predecessors in title. Appellees maintained that, in June 2011, Appellants took possession of the Disputed Railroad Line by removing trees and brush on it for the stated purpose of installing a private driveway on the Disputed Railroad Line to Appellants' real estate. Before starting to construct their proposed driveway, Appellants had the Disputed Railroad Line surveyed and installed survey stakes.

Appellees moved for a preliminary and permanent injunction to prevent Appellants from entering onto the property until the dispute over ownership was resolved. The preliminary injunction was granted, and the matter eventually proceeded to a non-jury trial. The trial court, the Honorable John C. Reed, issued an extensive opinion outlining the chain-of-title of all the parties, and it performed an admirable job of resolving this land dispute. Appellants and Appellees have a common grantor to their respective properties, Robert Thompson. Mr. Thompson also owned any land at issue in this case that became titled in the name of a railroad. The parties' respective positions were as follows.

Appellees maintained that the Disputed Railroad Line was a section of a railroad right-of-way and that they became owners of the Disputed Railroad Line after the railroad abandoned the right-of-way. Under Pennsylvania law, when a railroad right-of-way is abandoned, ownership of the abandoned railroad track reverts to the adjacent property owners, who each take to the centerline. *Dellach v. DeNinno*, 862 A.2d 117, 118 (Pa.Super. 2004) ("When a railroad abandons an easement, the right-of-way is extinguished and the land is owned in fee simple by the owner or owners of the land on either side of the right-of-way.").

Appellants claimed that they own the Disputed Railroad Line in fee simple absolute as follows. The Disputed Railroad Strip was owned by the Sharpsville Railroad Company in fee simple and, as noted, part of a piece of property known as Railroad Parcel Four. Railroad Parcel Four was included in Appellants' chain of title under a March 3, 1982 quit-claim deed from Penn Central Corporation, as successor to the Sharpsville Railroad Company, to Anna Sonoff.

The trial court concluded that the dispositive document in this case was an unrecorded June 27, 1864 agreement between Robert Thompson and Frank Allen. The document in question reads:

> Witnesseth: that for and in consideration of the covenants and agreements upon the part of Frank Allen to be kept and performed by him, The said Robert Thompson hath this day agreed to **release unto the Said Frank Allen, his heirs and assigns, the right of way for a coal rail road** over and through land of the said Thompson situate in the Township of

- 4 -

Hickory aforesaid, as the same is now located and surveyed and graded through said farm, being about one hundred and eight rods in length and not to exceed four (4) rods in width. In consideration of which the said Frank Allen agrees and binds himself to pay unto the said Robert Thompson, his heirs and assigns the sum of Four Hundred and Six Dollars (406 $). It is further agreed that said Thompson shall at his pleasure fence the road through the woodland being about thirty rods, for which he shall receive from said Frank Allen his assigns the sum of Sixty Dollars...

Joint Exhibit 1 and Joint Stipulation 1 ("June 27, 1864 unrecorded release").

The Disputed Railroad Line is a portion of the right-of-way conveyed in this document. Translating rods into feet, the trial court noted that the land conveyed in the June 27, 1864 unrecorded release was 66 feet wide and 2,970 feet in length. The June 27, 1864 unrecorded release was assigned on March 20, 1866, by Frank Allen, as assignor, to the Sharpsville & Oakland Railroad Company, which was formed in January 1866, as assignee. The trial court observed that area railroads bought rights-of-way to transport coal from various mines in Hickory Township to iron furnaces.

Sharpsville Railroad Company, which was incorporated in 1876, became the successor owner of this right-of-way owned by the Sharpsville & Oakland Railroad Company through two conveyances. The first transfer was a straw purchase. Specifically, on March 25, 1876, Sharpsville & Oakland Railroad Company, as grantor, deeded to Charles E. Agnew, trustee, as grantee, fifty-six parcels of land owned by it. In turn, Mr. Agnew, on March 25, 1876, conveyed the same fifty-six parcels of property the he obtained from Sharpsville & Oakland Railroad Company to Sharpsville Railroad

Company.  Both of the March 25, 1876 deeds were recorded on August 25, 1876. The two deeds conveyed the right-of-way created by Mr. Thompson on June 27, 1864, from Sharpsville & Oakland Railroad Company to Sharpsville Railroad Company.  Specifically, in the March 25, 1876 deeds, parcel nineteen is described as a "Right of way thro[ugh] land of R. Thompson about 180 rods in length and not to exceed 4 rods in width. Thompson is to maintain fences.  Released by R. Thompson to Frank Allen June 27, 1864, release assigned to S. & O. R.R. Co. March 20, 1866." Joint Exhibit 5 and Joint Stipulation 5.

Sharpsville Railroad Company was issued a certificate of abandonment on October 18, 1930 by the Interstate Commerce Commission.  The certificate permitted Sharpsville Railroad Company to abandon its railroad rights-of-way and lines.  That certificate indicated that the coal mines intended to be serviced by that company's railroad tracks had not been operating for about fifteen years prior to issuance of the certificate.  After that abandonment, the Sharpsville Railroad Company was dissolved.

The court examined a 1916 Railroad Map created by Sharpsville Railroad Company wherein Sharpsville Railroad Company diagrammed Railroad Parcel Four as comprising a right-of-way over lands then owned by C.G. Canon:



The 1916 Railroad Map also contained a chart. On that chart, Railroad Parcel Four is described as being derived from a release dated June 27, 1864 from Robert Thompson to Frank Allen and comprising 1.21 acres and then from a release dated March 20, 1866 from Frank Allen to Sharpsville and Oakland Railroad Company.

Thus, the land interest created in the June 27, 1864 unrecorded release became designated as Railroad Parcel Four. At trial, Appellees maintained that the June 27, 1864 unrecorded release created a right-of-way in Mr. Allen and that it became a railroad right-of-way upon its acquisition and use as such by Sharpsville & Oakland Railroad Company, and, in turn, by Sharpsville Railroad Company.

Appellants submitted that the June 27, 1864 unrecorded release was a conveyance by Mr. Thompson to Mr. Allen of a fee simple absolute interest in the strip of land. Specifically, the trial court explained that Appellants' position at trial was that the June 27, 1864 unrecorded "release is a conveyance of full and complete title without reservations or exceptions." Trial Court Opinion, 3/18/14, at 17. The trial court noted that, if Mr. Thompson conveyed a fee simple absolute interest in the 66 by 2,970 foot piece of land known as Railroad Parcel Four, there would have been no reversion of title to that strip to the adjacent property owners when the Sharpsville Railroad Company abandoned its railroad rights-of-way in 1930. Instead, it would have been continued to be owned by Sharpsville Railroad Company after that company abandoned its rights-of-way. Then, Appellants would have owned Railroad Parcel Four in fee simple by virtue of the quit-claim deed from Sharpsville Railroad Company's successors conveying to Appellants' predecessors in title.

The trial court concluded that the June 27, 1864 unrecorded release created a right-of-way and was not a conveyance in fee simple absolute of the strip of land to Mr. Allen. It therefore found that, when the Sharpsville Railroad Company abandoned its rights-of-way in 1930, the adjacent landowners, who included Appellees' predecessors in title, became fee simple owners to the centerline of the right-of-way created in the June 27, 1864 unrecorded release. Under the trial court's construction of the June

27, 1864 unrecorded release, when Appellants' predecessor in title, Anna Sonoff, obtained the parcel of land known as Railroad Parcel Four under the March 3, 1982 quit-claim deed from Penn Central Corporation, as successor to the Sharpsville Railroad Company, she did not become the owner of Railroad Parcel Four, of which the Disputed Railroad Line was part, because Penn Central Corporation owned no rights in that parcel in 1982.

The trial court used the following principles when construing the June 27, 1864 unrecorded release. It noted that the term release was utilized during the nineteenth century to characterize conveyances of rights-of-way. In other words, the grantor would "release" the land as a right-of-way rather than use the terms grant and convey, which would signify that a fee simple absolute was being sold to the grantee. In concluding that the June 27, 1864 unrecorded release created a right-of-way in Mr. Allen rather than a fee simple absolute interest, the trial court also relied upon the following:

> 1. No words of conveyance are used, other than the word "**release**." ("Robert Thompson hath this day agreed to **release** unto Frank Allen, his heirs and assigns").
>
> 2. No habendum, tenendum, or warranty clauses are used.
>
> 3. The intended purpose of the "release" was, as stated, a right-of-way for a railroad to transport coal. ("the right of way for a coal rail road").
>
> 4. The amount of property encompassed by the "release" was 108 rods (1,782 feet) in length by not more than 4 rods (66 feet) in width, which computes as being approximately 2.7 acres.
>
> 5. The location of the "released" right-of-way was clearly established as running through Thompson's farm. ("over and

through the land of Thompson as the same is now located and surveyed and graded through said farm.")

      6. The stated consideration of $406 for the "release" of a strip of land containing 2.7 acres to be used as a coal railroad right-of-way through a farm does not appear to be excessive in terms of 1864 dollars.

Trial Court Opinion, 3/28/14, at 22-23 (footnotes omitted; emphases in original).[1] The trial court additionally observed that sixty-six feet was apparently the usual and customary width of railroad easements in 1864.

In light of this interpretation of the June 26, 1864 unrecorded release, the trial court granted Appellees judgment in ejectment and made permanent the preliminary injunction entered January 6, 2012. *Id*. at 38. It indicated that it would schedule trial on the trespass claim to assess damages caused by the Appellants' harvesting of trees on the Disputed Railroad Line. This appeal followed denial of Appellants' post-trial motion.

Before we address the issues raised herein, we must consider whether we have jurisdiction to entertain this appeal. Since there is a pending request for damages pursuant to Appellees' trespass claim, the order in question appears not to be a final, appealable order. However, the court also clearly and unequivocally entered a permanent injunction against Appellants; we thus conclude that we can entertain the merits of this appeal.

_____

[1] We observe that, although not challenged on appeal, the trial court's interpretation of the June 27, 1864 unrecorded release as conveying a right-of-way to Mr. Allen rather than conveying a fee simple absolute interest is unassailable. *See Mackall v. Fleegle*, 801 A.2d 577 (Pa.Super. 2002).

Under Pa.R.A.P. 311, a party can appeal as of right from an order entering a permanent injunction:

> (a) **General Rule.** An appeal may be taken as of right and without reference to Pa.R.A.P. 341(c) from:

> (4) *Injunctions.* An order **granting**, continuing, modifying, refusing or dissolving **injunctions**, or refusing to dissolve or modify injunctions, except for injunctions pursuant to Sections 3323(f) and 3505(a) of the Divorce Code, 23 Pa.C.S. §§ 3323(f) and 3505(a). A decree nisi granting or denying an injunction is not appealable as of right under this rule, unless the decree nisi (i) grants an injunction effective upon the entry of a decree nisi or (ii) dissolves a previously granted preliminary injunction effective upon the entry of a decree nisi.

Pa.R.A.P. 311(a)(4) (emphases added). In this case, the court entered a permanent injunction, the injunction was not entered pursuant to the Divorce Code, and it was not in the form of a decree *nisi*, which is a provisional decree. *O.D. Anderson, Inc. v. Cricks*, 815 A.2d 1063, 1069 n. 5 (Pa.Super. 2003) ("A decree *nisi* is a 'provisional decree, which will be made absolute on motion unless cause be shown against it.' Black's Law Dictionary (6th Ed.)").

Thus, even though there is a pending request for damages, Appellants can appeal the ruling since it granted an injunction. In *Wynnewood Development, Inc. v. Bank and Trust Co. of Old York Road*, 711 A.2d 1003 (Pa. 1998), Wynnewood filed a complaint seeking specific performance of an agreement of sale regarding a parcel of land, an injunction preventing Old York Road from conveying, assigning or otherwise transferring its rights to the property, and compensatory damages. Wynnewood appealed from

the denial of its demand for an injunction and specific performance. When the appeal was filed, the trial court had not resolved whether there was an oral contract for the sale of property and whether Wynnewood suffered damages based upon its breach. We quashed the appeal.

Our Supreme Court reversed. It concluded that Wynnewood had an appeal as of right under Pa.R.A.P. 311(a)(4) over the order because that order denied a request for an injunction. It noted that "the denial of Wynnewood's prayer for injunctive relief was neither made under the Divorce Code nor entered as a *decree nisi*. Thus, Rule 311(a)(4) mandates a finding that the trial court's order granting Old York Road's motion for summary judgment and dismissing Wynnewood's prayer for injunctive relief and specific performance was an interlocutory order appealable as of right." *Id*. at 1005. Since, in its disposition herein, the trial court expressly entered a permanent injunction, we can entertain this appeal despite the pending damages claim. *See also O.D. Anderson, Inc.*, *supra*.

Appellants raise the following issues on appeal:

I.   Whether the trial court failed to attach forfeiture status to the 1864 unrecorded release, unlawfully ignored the 1869 and 1870 articles of agreement and the 1871 deed conveying fee simple title, and failed to recognize the "merger" which took place upon the recording of the 1871 deed.

II.   Whether the trial court misinterpreted the 1916 Railroad Map.

III. Whether the trial court misinterpreted the 1876 straw transaction.

- 12 -

IV. Whether the trial court erred in concluding that the ejectment plaintiffs (appellees herein) had met their burden of proof.

Appellants' brief at 9.

In **Anderson v. Litke Family Ltd. Partnership**, 748 A.2d 737 (Pa.Super. 2000), we examined the propriety of a court's ruling in an ejectment case after it proceeded to a non-jury trial. We noted therein that our appellate role is

> limited to a determination of whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. Findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent error of law or abuse of discretion. When this Court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected.

*Id*. at 739. The following principles apply:

> The plaintiffs' burden in an action in ejectment at law is clear: they must establish the right to immediate exclusive possession. Recovery can be had only on the strength of their own title, not the weakness of defendant's title. The crux of an ejectment action, therefore, rests with the plaintiffs' ability to identify, by a preponderance of the evidence, the boundaries of a parcel of land to which they are out of possession but for which they maintain paramount title.

**Doman v. Brogan**, 592 A.2d 104, 108 (Pa.Super. 1991) (citations omitted).

Appellants' first contention relates to the doctrine of merger. They posit that ownership of both the right-of-way and its surrounding land vested in the same owners, Samuel Kimberly and T.J. Porter, and that the

- 13 -

right-of-way created in the June 27, 1864 unrecorded release was thereby extinguished and merged because an owner of land cannot own an easement over his own property. *See Obringer v. Minnotte Bros. Co.*, 42 A.2d 413 (Pa. 1945).

Appellants rely upon three documents executed between 1869 and 1871 among Mr. Thompson, as seller, and Mr. Kimberly and Mr. Porter, as buyers, of fifty-five acres of land owned by Mr. Thompson. The June 27, 1864 right-of-way then owned by Sharpsville and Oakland Railway traversed this acreage. Those three documents include: 1) an 1869 Article of Agreement; 2) an 1870 Article of Agreement, and 3) an 1871 deed. The December 21, 1869 Article of Agreement provided that "it is further agreed and understood by and between the parties hereto that the possession of said land rights-of-way have this day been surrendered and given up to said Kimberly & Porter."

Appellants' position is as follows. The quoted language establishes that "Robert Thompson, Samuel Kimberly and T.J. Porter had an understanding among themselves that the right-of-way granted under the unrecorded June 27, 1864 release document had been forfeited and surrendered by the grantee [which, at that point, was Sharpsville & Oakland Railroad Company] therein in favor of Kimberly and Porter." Appellants' brief at 23. Appellants continue: "Said surrender could have been verbal or in writing. If in writing, no copy thereof has been located." *Id*. Appellants

also note that language in documents indicates that the grantees intended to build a railroad track on the land, thereby establishing that no track was constructed on the June 27, 1864 right-of-way in 1869-1871.

We first observe that, when Mr. Thompson executed those documents, he no longer owned the right-of-way conveyed in the June 27, 1864 unrecorded release and could not have conveyed that right-of-way pursuant to this language. Any understanding held by Mr. Thompson, Mr. Kimberly, and Mr. Porter about a right-of-way owned by another party would be of absolutely no effect, whether or not a railroad track was constructed on the right-of-way then owned by Sharpsville & Oakland Railroad Company.

Moreover, it is clear that Sharpsville & Oakland Railroad Company had not relinquished its right-of-way, either verbally or in writing, to Mr. Porter and Mr. Kimberly around 1869. In 1876, years after the 1869-1871 documents involving Mr. Thompson, Mr. Kimberly, and Mr. Porter, two deeds were prepared. By those 1876 deeds, Sharpsville Railroad Company became the successor owner of the right-of-way created in the June 27, 1864 unrecorded release and owned by the Sharpsville & Oakland Railroad Company in 1876 by virtue of the March 20, 1866 assignment of the right-of-way by Mr. Allen to Sharpsville & Oakland Railroad Company.

Specifically, on March 25, 1876, Sharpsville & Oakland Railroad Company, as grantor, deeded to Charles E. Agnew, trustee, as grantee, fifty-six parcels of land owned by it. In turn, Mr. Agnew, on March 25, 1876,

conveyed the same fifty-six parcels of property he obtained from Sharpsville & Oakland Railroad Company to Sharpsville Railroad Company. The two deeds specifically and unequivocally conveyed to Mr. Agnew and, in turn, to Sharpsville Railroad Company, the right-of-way created by Mr. Thompson in the June 27, 1864 unrecorded release. Specifically, in both March 25, 1876 deeds, parcel nineteen of the fifty-six parcels is described as a "Right of way thro[ugh] land of R. Thompson about 180 rods in length and not to exceed 4 rods in width. Thompson is to maintain fences. **Released by R. Thompson to Frank Allen June 27, 1864, release assigned to S. & O. R.R. Co. March 20, 1866**." Joint Exhibit 5 and Joint Stipulation 5 (emphasis added).

The language in these deeds unequivocally establishes that Sharpsville & Oakland Railroad Company still owned the right-of-way created on June 27, 1864 and had not relinquished it, either verbally or in an undiscovered writing, to Mr. Kimberly and Mr. Porter. A vague reference to undescribed rights-of-way in an 1869 Article of Agreement among Mr. Thompson and Mr. Kimberly and Mr. Porter did not encompass the land already released by Mr. Thompson to Mr. Allen because Mr. Thompson no longer owned the June 27, 1864 right-of-way when he signed the various documents to Mr. Porter and Mr. Kimberly. The documents executed by Mr. Thompson, Mr. Kimberly, and Mr. Porter did not bind Sharpsville & Oakland Railroad Company since it did not execute them. Any verbal understanding among Sharpsville & Oakland

Railroad Company and Mr. Kimberly and Mr. Porter regarding transfer of an interest in land by Sharpsville & Oakland Railroad to Mr. Kimberly and Mr. Porter would be invalid under the Statute of Frauds. Hence, we reject Appellants' first position.

In their second argument, Appellants suggest that the trial court misconstrued the 1916 Railroad Map, which supported that Railroad Parcel Four was, in fact, a right-of-way and created in the June 27, 1864 unrecorded release. They note that there was a statement on the map, "See Deeds Nos. 1 and 1-A Map No. 1, Area 4.417 Ac. Includes Par. Nos. 4, 5, & 6." Appellants' brief at 27. Appellants admit that the 1916 Railroad Map discovered in connection with this lawsuit did not have deeds attached.

Appellants submit that the quoted language means that "there were two subsequent deeds in the chain of title which conveyed a higher quality title interest to the Sharpsville Railroad Company, said deeds covering a tract of land larger than the parcel described" in the June 27, 1864 unrecorded release. Appellants' brief at 28. Appellants continue that "one of said deeds was assuredly the 1871 general warranty deed" from Mr. Thompson to Mr. Kimberly and Mr. Porter. We surmise from this argument that Appellants are suggesting that there was a merger of the right-of-way because Sharpsville Railroad Company became owner of both the June 27, 1864 right-of-way and the land surrounding it.

Appellants have not produced deeds conveying a higher quality interest in Railroad Parcel Four or any surrounding land to Sharpsville Railroad Company. The chain of title outlined by the trial court contains no conveyance of the land around the June 27, 1864 right-of-way to Sharpsville Railroad Company. Additionally, there is no basis upon which to draw any conclusion about what deeds were attached to the map. Likewise, no inference whatsoever can be drawn about the interests described in those deeds. We reject this claim.

Appellants' third argument is that the trial court misinterpreted the 1876 transactions involving Mr. Agnew and Sharpsville Railroad Company. Specifically, Appellants note that the 1876 deeds recite that the "rights-of-way described in paragraphs 11 and 18 would revert to the grantor upon disuse for railroad purposes." Appellants' brief at 29. Appellants insist that, since there is no mention as to "a reversion of the 1864 release from Robert Thompson," which was conveyed in the 1876 deeds as parcel nineteen, "the drafter of said 1876 deed (obviously an attorney) knew the law as to reversion, was familiar with the documents in the chain of title as to the Robert Thompson strip of land, and saw no possibility for reversion under the 1864 document." *Id*.

The law provides that when a railroad right-of-way is abandoned, the adjacent owners become owners of the right-of-way. The fact that this principle of law was acknowledged as to some of the rights-of-way in the

1876 deeds does not erase the effect of the law as to the other rights-of-way. The right-of-way at issue in this lawsuit was created in 1864, and a drafter's intent in an 1876 deed cannot change the law applicable to this prior land grant. If the law of reversion was not to apply to the June 27, 1864 right-of-way, then the June 27, 1864 unrecorded release had to express that intent.

We also disagree with Appellants' final position, which is that the trial court erred in deciding that Appellees met their burden of proof. Appellants claim that ejectment was granted based upon the weakness in their title rather than the strength of Appellees' title. The trial court set forth how Sharpsville Railroad Company acquired the right-of-way created in the June 27, 1864 unrecorded release and how it expressly abandoned all of its rights-of-way in 1930. Since the railroad lines were abandoned, the adjacent property owners, which were included within Appellees' chain-of-title, became owners in fee simple absolute to the centerline in 1930.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/17/2015